# CONTINENTAL CASUALTY CO. v. WYNNE.

## No. 2321.  Opinion Filed December 7, 1912.

### (129 Pac. 16.)

1. **INSURANCE—Action on Policies—Pleading.** The court did not err in permitting plaintiff to introduce evidence under the pleadings, over defendant's objection.

2. **EVIDENCE—Demonstrative Evidence—Personal Injuries.** Ordinarily, where the question of a physical injury, its extent or permanency, is in issue, it is not error to permit the plaintiff to exhibit the injured part of the body to the jury.

3. **INSURANCE—Action on Policies—Admissibility of Evidence.** In an action on a policy of insurance against accidents, where total and continuous inability to perform work for a period of 52 weeks was alleged as resulting from a broken shoulder, plaintiff was permitted to testify regarding the continued pain and suffering caused by the wound and resulting operations made necessary by it; and, further, that at the end of the period of indemnity his arm had not recovered so as to be of use, etc. **Held**, not error, as this evidence was competent on the question of continuous disability to work.

4. **SAME—Notice of Accident—Evidence.** Where an accident policy provided that in case of accident the insured should, within 15 days thereafter, give notice of the same to the insurance company at its office issuing the policy, **held**, that evidence that insured, within four or five days after the accident, wrote a letter to the company, at its issuing office, advising it of his injury, and that the company, on the nineteenth day after the injury, replied thereto, inclosing blanks and requests for detailed information, without mentioning the date it had received insured's notice, and making no claim that it was not received within fifteen days, was sufficient evidence to warrant the jury in finding that notice had been given as required by the policy.

5. **SAME—Action on Policies—Sufficiency of Evidence.** Evidence examined, and **held** to show that plaintiff had furnished the insurance company sufficient "affirmative proofs of loss of time" within 30 days after the termination of the period of its liability, as required by the policy.

6. **TRIAL—Instruction—Applicability to Evidence.** In an action on an accident insurance policy, brought to recover for "continuous inability to engage in any occupation or labor," an instruction was given wherein, after advising the jury that before plaintiff could recover it must be shown that the injury caused total and continuous disability to engage in any labor or occupation, the court qualified this language by adding "that, even though during the time he claimed to be totally and continuously disabled he did perform some trivial services," such fact should not, of itself, be so construed "as to prevent plaintiff from recovering for all of said time,

if you find from the evidence that he was at the time of said trivial services unable to have performed them. The test is, not whether the plaintiff did perform any services of any character, but whether the plaintiff was able to perform services of any sort or character." Held, that the instruction was justified under the evidence.

7.     INSURANCE—Accident Insurance—"Total Disability." "Total disability," under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists, although the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation.

8.     SAME—Action on Policies—Issues and Proof. Where the petition on an accident policy alleged that affirmative proofs of loss of time had been furnished, evidence that plaintiff wrote to the company, claiming indemnity and asking for blanks if additional proof was required, and that the company answered, denying all liability and refusing blanks on which to make a mere formal proof, was not within the issues.

9.     TRIAL—Evidence—Objections. In an action on an accident policy, a general objection to the admission of testimony as to a claim by the insured and response denying all liability were not sufficient to raise the point that such evidence was not within the issues.

(Syllabus by Brewer, C.)

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by Frank E. Wynne against the Continental Casualty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*J. W. Hocker* and *Geo. W. Welsh,* for plaintiff in error.

*B. F. Williams, Jr.,* and *Lydick & Eggerman,* for defendant in error.

Opinion by BREWER, C. This is a suit on an accident insurance policy, and was brought by Frank E. Wynne, as plaintiff, against the Continental Casualty Company, a corporation, as defendant, in the district court of Cleveland county, September 19, 1908. We shall refer to the parties as they were known in the trial court.

The material allegations of plaintiff's petition, briefly summarized, are: That the defendant, on the 10th day of May, 1906,

in consideration of the premiums then and there paid, delivered its policy of insurance to plaintiff, wherein it agreed to pay him a weekly indemnity for total loss of time necessarily resulting from personal injury he might receive, which was effected independently of all other causes, through ordinarily violent and accidental means, and which caused at once total and continuous inability to engage in any occupation or labor, and agreed to pay a weekly indemnity of $10 per week for total loss of time resulting from such injury, not to exceed, however, a period of 52 consecutive weeks, and did by said policy insure plaintiff for a period of one year, beginning at noon on May 10, 1906. That plaintiff was employed as a deputy sheriff, and his duties, as specified in the policy, were to make arrests. That on the 25th day of December, 1906, plaintiff, while in the performance of his duties as a deputy sheriff in attempting to quiet a disturbance in an opera house at Lexington, accidentally fell down a flight of steps, dislocating his shoulder and totally disabling him from engaging in any business and performing his duties since the time of such injury, and for the full period of 52 weeks.

Plaintiff further alleged that he had given due written notice of his injury to the defendant within fifteen days after it occurred, and that he had given due and affirmative proof of the duration of the said loss of time and during which he was totally disabled. The defendant answered, admitting its corporate character, the nature of its business, the issuance of the policy in suit, and that it was in full force and effect at the time of the alleged accident. Defendant further alleged for defense that plaintiff was not injured while in the performance of his duties as deputy sheriff, but while he was unlawfully engaged in pulling off a fight between a bulldog and badger, and that plaintiff was intoxicated at the time of the injury, all of which are in direct violations of the provisions of the policy.

Defendant further denied that plaintiff was permanently injured, or that he was totally disabled for 52 consecutive weeks. Defendant further denied that due notice of the injury had been

given to the company, or that plaintiff had given it affirmative proof of the duration of the time of his total disability, as required by the policy.

The plaintiff filed a reply, and the cause was tried to a jury on February 5, 1910, resulting in a verdict for plaintiff for $520, with interest thereon as prayed for in the petition. The defendant, as plaintiff in error here, urges seventeen separate assignments of error: (1) Refusal to sustain defendant's objection to the introduction of any evidence. (2) In allowing the plaintiff, while on the witness stand, to exhibit to the jury the shoulder alleged to have been injured. The third, fourth, fifth, sixth, seventh, and eighth assignments of error are based upon the admission of evidence alleged to be incompetent. The ninth, tenth, eleventh, twelfth, and thirteenth assignments challenge certain instructions given to the jury. The fourteenth, fifteen, and sixteenth assignments go to certain instructions asked by defendant and refused. The seventeenth assignment goes to the action of the court in allowing an amendment of the petition, after the closing of the case, to conform to the proof.

(1) The contention made by defendant, that the court erred in permitting evidence to be introduced under the pleading, cannot be sustained. This assignment is based upon the theory that the petition did not sufficiently allege a compliance with the terms of the policy in the matter of giving notice within fifteen days of the injury, and in furnishing affirmative proof of the duration of total disability within 30 days after termination of the period for which the company is liable. Part 6 of the policy provides:

"Affirmative proof must be furnished to the company at its office on its forms, in case of loss of time, within thirty days after the termination of the period for which the company is liable."

The policy also provides that notice of the accident must be given the company within fifteen days after it occurred, etc. The allegations of the petition, while they may have been open to a motion to make more definite and certain, yet without such attack they were entirely sufficient. The petition states a cause

of action, and the plaintiff was entitled to introduce his evidence thereunder.

(2)　The next objection (*i. e.*, that it was error to permit plaintiff to show the jury the parts of his person—that is, his shoulder and collar bone—alleged to have been injured and broken) is likewise without merit. We think ordinarily, where the question of an injury, or its extent or permanency, is in issue, that this would be proper. *City of Kingfisher v. Sparel Altizer,* 13 Okla. 121, 74 Pac. 107; Wigmore on Evidence, vol. 3, sec. 222, and note; Jones on Evidence (2d Ed.) 396-398. For a discussion of the principle involved, see *C., R. I. & P. Ry. Co. v. Hill, post,* 129 Pac. 13. But it was peculiarly proper in this case because of a provision of the policy sued on. In part 3 numerous things are mentioned, the happening of any one of which, it is stipulated, shall reduce the amount payable to one-tenth of the amount which would otherwise be payable under the policy. One of these things causing such reduction is: "Where the accidental injury makes no visible contusion or wound on the exterior of the body of insured." Therefore, regardless of whether this testimony would have been otherwise competent, it certainly was both competent and material in this case to show that the injury had left its visible mark on the body of the insured; and we can think of no proof so satisfactory in showing the same as the exposure of the part alleged to have been seriously wounded and injured.

(3)　The errors alleged as to the admission of evidence divide themselves into two groups: (1) Assignments 3, 4, 5, and 8 go to the admission of evidence of pain and continued suffering, and inability to labor occasioned thereby, from the date the injury was received up to the expiration of the full period of 52 weeks. The plaintiff was allowed to testify that at the expiration of this period his shoulder was still not in a condition to be of use, and that he still had no use of a portion of one arm. The witness was permitted to demonstrate how far he could move this arm, and that it was painful to move it at all.

The objection to this testimony was put upon the ground that the policy did not provide for indemnity for pain and suffering.

This is true it does not; nor was the plaintiff allowed to recover for pain and suffering. This evidence was introduced on the question of "continuous disability." This was one of the most material and stubbornly contested points in the case. For the insured to recover it was necessary, not only to show the injury, but that it was of such a nature and of such a character and extent that the injury, coupled with the effect and results flowing solely from it, created a condition under which the plaintiff was *"continuously disabled from performing work."* The pain and suffering produced solely by an injury to the body, if severe enough, would, of itself, incapacitate a person from doing work. The fact that at the end of the period for which he was indemnified the shoulder and arm were still useless, and would not perform their respective functions, where it was shown that no other injury had been received, tended to prove disability through the period immediately preceding, and through which he was indemnified.

The sixth and seventh assignments go to the proof of the contents of certain letters, claimed to have been written the company. The policy provides:

"Written notice of claims must be given by the insured or his beneficiary to the company at its office from which the policy is issued and be received there within fifteen days from the date of the accident causing the loss for which claim is made," etc.

And also:

"Affirmative proof must be furnished to the company at its said office on its forms, in case of lost time, within thirty days after the termination of the period for which the company is liable," etc.

The first of these provisions relates to notice of the accident; the second to the duration of the disability. Prior to the trial notice was served upon defendant to have and produce at the trial the letters and correspondence between the parties relative to the claim. At the trial plaintiff was permitted to testify that within four or five days after the accident his brother wrote for him, and he signed and forwarded to the company a letter, stating that he had been injured in an accident, etc. The witness also testified he had written the local agent of the company, advising

him that he had notified the company of his injury, but had not received a reply. It is pointed out that this was error, as the policy provided .that notice be given.the company at the issuing office. A letter from the company's home office .is introduced, which shows clearly that the notice had been received by it. It does not show that it was received within fifteen days, but it makes no complaint or claim that it was not so received. This letter is dated January 14, 1907, which is only about nineteen days after the injury, and incloses a blank to be filled out by plaintiff and his physician, so that "we may properly understand the nature and extent of your disability." Numerous other letters from the company, relative to the claim and the progress of plaintiff's recovery from his injuries, were introduced. The plaintiff was induced to take and pay a renewal of the policy for another year while he was still incapacitated, as the various letters show. The plaintiff having.testified he sent the notice four or five days after the injury, the acknowledgment of receipt of same by the company, and its negotiations and actions in sending blanks and requiring medical examinations and certificates relative to the extent and progress of the wounds, with 'no claim that the notice was not received in time, were sufficient to warrant the jury in finding that it was in fact given within the time, as was found by them. Besides, if it had not been given in time, the conduct of the company showed clearly that it had elected to waive the provision (*St. L. & S. F. R. Co. v. Ladd,* 33 Okla. 160, 124 Pac. 461; *St. L. & S. F. R. Co. v. James et al., ante,* 128 Pac. 279); and, besides, this provision of notice has been held to be a condition subsequent, and substantial compliance with it sufficient. *Pacific Mutual L. Ins. Co. v. Adams,* 27 Okla. 496, 112 Pac. 1026.

Under this state of facts, the company really having notice, as is so abundantly shown, evidence that some other notice was given, not authorized by the policy, becomes clearly immaterial, and could have had no injurious effect on the rights of defendant.

The next point arose in this way: Plaintiff testified that at the expiration of the period the policy covered that he wrote and mailed to the company a letter, in which he made a claim for the full indemnity, stating that his total inability to work had

covered the full period of 52 weeks, and asking for blank forms if additional proof should be required. This evidence was to support the allegation of final notice contained in the petition, but it seems to have been urged at the trial that this was not a sufficient compliance with the requirements of the policy. The plaintiff was then permitted to testify that in reply to this letter of notice he received a letter from the company, which had been destroyed, and that it contained a positive denial of all liability, and refused to send plaintiff blanks upon which to make more formal proof.

The objection urged is that, as the petition pleaded that "affirmative proofs of loss of time" had been furnished, and as this letter from the company tended to prove a waiver of such affirmative proof of loss of time, it was incompetent, because not within the issues raised by the pleading. There is no doubt but that evidence, to be relevant, must tend to prove or disprove some issue in the case, and the issues are determinable from the pleading. Jones on Evidence, secs. 135, 136; *Roberson v. Hubler,* 11 Okla. 297, 67 Pac. 477; *Graham v. Heinrich,* 13 Okla. 107, 74 Pac. 328; *Lockwood Bros. v. Frisco Lbr. Co.,* 22 Okla. 31, 97 Pac. 562.

The objection made to this evidence, however, was simply, "We object." This did not advise the court of the grounds of the objection; and, while proof of the contents of the letter was irrelevant upon the grounds urged in the brief, yet it was competent to show that such a letter had been received from the company, acknowledging receipt by it of the final claim for loss of time. If the objection had been made at the time that this evidence was not within the issues, doubtless the plaintiff would have then and there asked and been permitted to amend the petition, so as to bring the evidence fairly within the issues, as was done at the end of the trial. But from an examination of the requirements of the policy we think the plaintiff had already proved the giving of a sufficient "affirmative proof of loss of time." The policy, unlike many other policies of insurance, is very indefinite as to what this final notice, or proof, shall be. Naturally this final proof would not need to be so formal and detailed as under fire policies. The insured was required to give prompt notice of the

injury, and through the entire course of his recovery the company required certificates, medical examinations, and minute and detailed information from time to time, and at the end of the period of disability was fully advised, or had the opportunity for full advice, both as to the injury and the duration and extent of the "continuous disability" resulting from the injury. Under this condition it is shown that at the end of the 52 weeks, the total time covered by the policy, the plaintiff made written demand on the company for payment of the $10 per week for the full 52 weeks, stating that his disability had continued for that time, and that the company acknowledged receipt of this claim. In view of the other notices, reports, examinations, and certificates furnished the company from time to time during the disability, and the further fact that no claim is made that the company demanded, or would have been benefited by, a fuller or more detailed statement by the insured, it is clear that the evidence, independent of any waiver, shows a substantial compliance by the plaintiff with the terms of the policy in this regard. A substantial compliance is sufficient. *St. Paul Fire & Marine Ins. Co. v. Mittendorf et al.*, 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651, and cases cited.

The conclusions reached on this point render it unnecessary to consider the action of the court in permitting the plaintiff to amend his petition, showing a waiver of final proofs, to conform to the evidence. The remaining points urged relate to the giving and the refusal to give certain instructions.

We gather from the briefs that the several instructions, the giving of which is complained of, are objected to on account of the statements they contain regarding the term "total disability." The policy indemnifies against "injury which causes at once total and continuous inability to engage in any occupation."

The court, after instructing that before plaintiff could recover it must be shown that the injury caused total and continuous disability to engage in any labor or occupation, then qualified the language by adding "that, even though during the time he claimed to be totally and continuously disabled he did perform some trivial services," such fact should not, of itself, be so con-

strued "as to prevent plaintiff from recovering for all of said time, if you find from the evidence that he was at the time of said trivial services unable to have performed them. The test is, not whether the plaintiff did perform any services of any character, but whether the plaintiff was able to perform services of any sort or character," etc. This instruction was given to cover evidence that, while wounded and unable to work or perform the duties of his office, or do other labor, plaintiff had handed to some witnesses or jurors a few subpoenaes upon an occasion.

The business of plaintiff named in the policy is "deputy sheriff, engaged in making arrests." We believe the instruction substantially stated the law applicable to the facts of the case. In Joyce on Insurance, sec. 3031, it is said:

"The general purpose of such clauses is to furnish an indemnity to assured for the loss of time by reason of accident or injury which prevents him from prosecuting his business, and it would seem that this ought to refer to his inability to perform substantially the duties which are necessary to be done in the business to which the contract refers—an absolute physical inability to perform substantially the duties which are necessary to be done in the business to which the contract refers. An absolute physical inability ought not to be meant in all cases; for the injury might be of such a character as that common care and prudence would preclude the prosecution of said business."

Kerr on Insurance, at page 386, announces the same general rule:

"Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total diability exists, although the insured is able to perform a few occasional acts, if he is not able to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labors so long as was reasonably necessary to effect a speedy cure."

And May on Insurance (4th Ed.) 522, says:

"Total disability from the prosecution of one's usual employment means inability to follow his usual occupation, business, or pursuits in the usual way. Though he may do certain parts of

his accustomed work, and engage in some of his usual employ-
ments, he may yet recover, so long as he cannot to some extent
do all parts and engage in all such employments."

*Commercial Travelers', etc., Ass'n v. Springsteen,* 23 Ind.
657, 55 N. E. 973; *Pacific Mut. L. Ins. Co. v. Branham,* 34 Ind.
App. 243, 70 N. E. 174.

We have read the other instructions complained of, and find
no substantial error in any of them; and all the instructions asked
by defendant and refused were covered in the general charge of
the court, in so far as they should have been given.

While it is true, as has been pointed out, there were some
immaterial errors at the trial, yet in none of them has a sub-
stantial right of the defendant been prejudiced. The whole case,
as we view it, shows beyond any question a liability upon the
part of the company to pay the full sum recovered, and that the
proceedings have been in all substantial matters correct.

The cause should be affirmed.

By the Court: It is so ordered.