### OZARK MUTUAL LIFE ASS'N v. WINCHESTER.

No. 16455—Opinion Filed Feb. 2, 1926.

**1. Insurance—Liability on Accident Policy— "Total Disability."**

"Total disability" under the provisions of an accident insurance policy does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists though the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation.

## 2. Same—"Loss of Foot Above Ankle."

The term "loss of foot above the ankle," used in an accident policy, does not mean an actual physical severance of the member from the body, but any injury which renders the member useless is a loss within the protection of the policy.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Bryan County; Porter Newman, Judge.

Action by J. F. Winchester against the Ozark Mutual Life Association of Mena, Ark., to recover upon a benefit certificate issued to Mrs. M. L. Winchester. Judgment for plaintiff, and defendant appeals. Affirmed.

Utterback & Stinson, for plaintiff in error.

Hatchett & Ferguson, for defendant in error.

Opinion by FOSTER, C. The defendant in error was plaintiff and the plaintiff in error was defendant in the trial court, and the parties will be designated herein as they appeared in the trial court. The action was based on a benefit certificate issued by the defendant to Mrs. M. L. Winchester on the 1st day of November, 1919, which, among other things, contained the following provision:

"This certificate becomes payable when the member suffers either the loss of an eye, a hand above the wrist, a foot above the ankle, total permanent disability by accident."

The plaintiff, J. F. Winchester, was the beneficiary named in said certificate, and he brought his action in the district court of Bryan county to recover the sum of $1,000 on account of an accident alleged to have occurred to Mrs. M. L. Winchester, his wife, in December, 1922, from which it was claimed that she lost the use of her foot and became totally and permanently disabled.

The answer of the defendant was a general denial, and upon the issues thus raised the cause was tried to the court and a jury, resulting in a verdict in favor of the plaintiff for the sum of $1,000. From this judgment and from an order overruling its motion for a new trial the defendant brings the cause regularly on appeal to this court for review, claiming that the judgment of the trial court is not supported by the evidence, is contrary to law, and that the trial court erred in the giving of certain instructions and in refusing to give other requested instructions.

The argument that the judgment is not sustained by sufficient evidence is based upon the proposition, as shown by the evidence, that Mrs. Winchester is still able to perform and does perform a portion of her household duties, such as sewing, washing the dishes, using her crutches and wheel chair, and that the injury to her right leg, of which she complains, was not such as to deprive her of the entire use of her right foot.

The evidence discloses that on the 19th day of December, 1922, Mrs. Winchester slipped and fell from the back porch of her home, breaking the fibula of the right leg; that she was confined to her bed for a period of about three months thereafter; that she suffered intense pain, and during a portion of the time of her confinement was delirious or unconscious, that in two or three weeks after the injury, inflammation developed, forming a pus which affected the entire leg so that it became necessary to insert drainages at the front and back of the knee joint. When the inflammation subsided, it was found that the knee joint had become ossified, that is to say that the patient has lost the ability to bend the leg at the knee joint, and that her right leg was shorter than the other leg, so that she could not place it on the ground without bending the other knee; that there was a sore on the ankle of her right foot which appeared to be incurable. Prior to her injury, Mrs. Winchester was an active woman, performing practically all of her housework, and, in the absence of her husband, milked the cows, fed the hogs, and performed other outside labor; that since the accident she has been compelled to use a wheel chair and crutch in going from place to place, and has been unable to perform her household duties except a few trivial things, such as sewing and washing the dishes, or such things as she may perform with her hands while sitting.

In this state of the record we think the jury was fully justified in finding that Mrs. Winchester had become totally and permanently disabled within the rule established in this jurisdiction.

In Continental Casualty Co. v. Wynne, 36 Okla. 325, 129 Pac. 16, this court said in the 7th paragraph of the syllabus:

" 'Total disability,' under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists, although the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation."

The body of the opinion quotes with approval this statement from May on Insurance (4th Ed.) p. 522, as follows:

"Total disability from the prosecution of one's usual employment means inability to follow his usual occupation, business, or pursuits in the usual way. Though he may do certain parts of his accustomed work, and engage in some of his usual employments, he may yet recover, so long as he cannot to some extent do all parts and engage in all such employments."

It must be borne in mind that Mrs. Winchester in following her occupation as housewife was necessarily required to engage in various employments, all of them, however, being within the scope of her general occupation. After the happening of the accident there were some of these employments which she could not engage in at all. The fact that she might have been able after the accident to engage in some special work, although within the general scope of her former occupation, cannot defeat her right to recover under the terms of the policy involved in the instant case. "Total disability," as used in the contract involved here, must be construed to mean the disability which prevented Mrs. Winchester from engaging in the occupation she was following at the time of the disability, and not some other vocation which she might be able to follow after the disability. Foglesong v. Modern Brotherhood (Mo.) 97 S. W. 240.

Furthermore, there is evidence in the record of a very positive character that Mrs. Winchester was wholly incapable of using her right foot by reason of the stiffened and ossified condition of the knee joint; that by reason of its shortened condition she could not place the right foot upon the ground, and it was therefore entirely useless. The rule has been announced in several cases and by text-writers, that the term "loss of certain members of the body, used in an accident policy, does not mean an actual severance of the member from the body, but any injury which renders the member useless is a loss within the protection of the policy, and that the expression "loss of foot" would generally be understood to mean the loss of the use of this particular member. 1 Corpus Juris, p. 467; Sheanon v. Pacific Mutual Life Insurance Co. (Wis.) 46 N. W. 799.

Instructions Nos. 2, 3, and 4 of the trial court are criticised as not being correct statements of the law applicable to the case. The instructions criticised are as follows:

"2. You are instructed that the phrase 'total and permanent disability,' as used in the insurance contract sued on herein, means that the person insured therein has, by reason of some accident, been rendered unable to follow her usual occupation, business, or profession, in her usual way, and that such injury is permanent.

"3. You are therefore instructed that if you find from a fair preponderance of the evidence that Mrs. M. L. Winchester, the wife of the plaintiff, has lost the use of her foot and is unable to attend to her usual work, by reason of an accident, and that such condition is permanent, then the plaintiff is entitled to recover herein, although you may find that she could to some extent do and perform some of her usual and customary duties incident to her occupation and business.

"4. You are further instructed that if you find that Mrs. Winchester has wholly recovered from her ailment due to an accident, or will recover, or that her affliction is not a total and permanent disability, then the plaintiff could not recover herein."

It is insisted that instruction No. 2 incorrectly told the jury that if Mrs. Winchester was incapacitated at all, she would be entitled to recover merely because she could not perform her duties in her usual way, and that the emphasis was placed on the manner of performance rather than upon the ability to perform. We do not think the instruction mentioned is subject to this criticism, especially when read and considered in connection with instruction No. 3, which immediately follows it. It will be observed that instruction No. 2 is practically a quotation from May on Insurance, quoted with approval by this court in Continental Casualty Co. v. Wynne, hereinbefore referred to. We have already adverted to the proposition that the term "disability," as used in an accident insurance policy, means disability from performing the occupation which the member was following at the time of the accident, and not some vocation which he might be able to follow after the accident. It is clear to us that it was this rule of law which the court had in mind when it employed the language "in her usual way" in the instruction criticised, since it is evident that Mrs. Winchester could not follow her usual occupation in the usual way, that is, engage in all of the employments incident to her occupation, if she was only able to perform a few occasional or trivial acts relating thereto.

Instruction No. 3 is criticised because the court is said to have told the jury that plaintiff could recover if they found that the insured merely lost the use of her foot. It is insisted that the words "loss of the foot above the ankle" mean that the foot must be amputated above the ankle. We think this

objection is fully met in what we have already said in this opinion in considering the sufficiency of the evidence to sustain the verdict. In reference to the entire loss of the use of the leg we quote as follows from testimony of Dr. Fuston:

"Q. You mean to tell the jury she can't stand on this part of the leg? A. Yes, sir. Q. This leg is shorter than the other? A. Yes, sir. Q. Can't touch the floor, step up or down with that leg? A. No, sir; of course, she could touch the floor. * * * Q. What I am getting at, you said that she has a permanent disability. What I am getting at is whether you mean that her leg is permanently stiffened? A. Well, I will say this: (Witness interrupted by counsel.) Q. (Continuing) or whether you mean that this sore was a permanent proposition? A. No, that sore, I can't tell you whether it will heal or not; I mean that limb. I figure that she would be better off without it than she would with it."

We fail to see wherein instruction No. 4 is subject to the criticism levelled against it by the defendant. We cannot see wherein the trial court, in giving instruction No. 2 in connection with instruction No. 4, construed the words "total permanent disability," as used in the contract to mean disability from which Mrs. Winchester had recovered or might recover.

Instruction No. 4 was given for the benefit of the defendant, and in effect told the jury that if they found that Mrs. Winchester had not suffered a total permanent disability, but was suffering from some other accidental injury from which she had wholly recovered, or would recover, then the plaintiff could not recover. The trial ocurt evidently was not referring in instruction No. 4 to an accidental injury of the nature it attempted to define in instruction No. 2, but was dealing with a lesser degree of injury, and the court in that connection told the jury that if they found that Mrs. Winchester's injuries were such that she had recovered or would wholly recover therefrom, the plaintiff could not recover. We fail to see wherein this instruction constitutes prejudicial error. We have read the instructions requested by the defendant and refused by the trial court, being instructions Nos. 4, 6, 8, and 9, and cannot agree that these instructions correctly state the law as announced by this court in the case of Continental Casualty Co. v. Wynne, and other authorities hereinbefore cited.

We are of the opinion that the instructions of the trial court hereinbefore quoted fairly stated the law applicable to the issues joined and evidence introduced, and that the trial court therefore committed no error in refusing defendant's requested instructions.

It is finally urged that the trial court abused its discretion in not granting the continuance requested by the defendant at the trial, on account of the absence of the witness, Mrs. Abernathy. We cannot agree with this contention. The order overruling the motion for continuance specifically provided that the affidavit setting forth the testimony of the absent witness could be used in evidence. This affidavit was introduced and used as the deposition of the absent witness, as contemplated by section 584, C. O. S. 1921, which among other things provides that if the affidavit is read as the deposition of the absent witness at the trial, no continuance shall be granted on the ground of the absence of such witness.

A careful examination of the entire record convinces us that the judgment of the trial court is correct, should be, and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 1 C. J. p. 463 §163. (2) 1 C. J. p. 467 §175.—See under (1, 2) anno. 24 A. L. R., pp. 203, 209; 14 R. C. L. p. 1315; 3 R. C. L.. Supp. 381; 4 R. C. L. Supp. p. 960; 5 R. C. L. Supp. p. 812, et seq.