## NEW YORK LIFE INS. CO. v. RAZZOOK.

No. 26351.   Oct. 20, 1936.

Wilson & Wilson, for plaintiff in error.

Twyford & Smith and William J. Crowe, for defendant in error.

PER CURIAM. This is an appeal by defendant below from a judgment rendered against it and in favor of Nemer Razzook for the sum of $2,681.33, representing the amount found due under the disability and waiver of premium provisions of a certain policy of life insurance issued by the New

York Life Insurance Company. This action was commenced on March 20, 1931, and was first tried February 10, 1932, before Warren K. Snyder, acting as special judge, with a jury. However, a motion for new trial was granted. The case was tried again on October 16, 1934, this time before Warren K. Snyder, special judge, with a jury having been waived, and at the time of the second trial the claim of plaintiff, as reflected by his petition as supplemented and amended, was for compensation at the rate of $70 per month from February 15, 1930, to August 31, 1933, and the recovery back of the sum of $330.33 paid the New York Life Insurance Company after the alleged disability commenced and while it was existing, under waiver of premium provisions of the policy. At the time of the second trial the evidence presented was the same as the evidence at the first trial, a transcript of such evidence being introduced in evidence in lieu of taking new testimony, and, in addition, the deposition of Dr. S. M. Hill of Dallas, Tex., taken July 20, 1934, was introduced in evidence. For convenience, the parties will be referred to as they appeared in the trial court; that is, the plaintiff in error will be referred to as defendant and the defendant in error will be referred to as plaintiff.

On November 18, 1924, the defendant issued a certain policy of life insurance to the plaintiff. Such policy also contained certain disability and waiver of premium provisions, which are hereinafter quoted. The pertinent provisions of the policy are as follows:

"The company agrees to pay to the insured Seventy Dollars each month during the lifetime of insured and also to waive the payment of premium, if the insured becomes wholly and presumably permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof.

"This contract is made in consideration of the payment in advance of the sum of $330.33, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy for the period terminating on the eighteenth day of November, Nineteen Hundred and Twenty-five, and of a like sum on said date and every twelve calendar months thereafter during the life of the insured. * * *

"Section 1. Disability Benefits.

"1. Total Disability.—Disability shall be deemed to be total whenever the insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit.

"2. Permanent Disability. — Disability shall be presumed to be permanent,—(a)

Whenever the insured will presumably be so totally disabled for life; or (b) After the insured has been so totally disabled for not less than three consecutive months immediately preceding receipt of proof thereof. * * *

"Waiver of Premium.—The company will waive payment of any premium falling due after approval of said proof and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the policy, but if due after receipt of proof will, if paid, be refunded on approval of proof. * * *

"Recovery from Disability. The company may from time to time demand due proof of the continuance of total disability, but not oftener than once a year after it has continued for two years. Upon failure to furnish such proof, or if at any time it shall appear to the company that the insured is able to engage in any occupation for remuneration or profit, no further income payments shall be made nor premiums waived."

The court below found that the plaintiff became sick in 1930, and since that time was totally and presumably permanently disabled up to the time of the judgment, within the meaning of the insurance policy, but found that requisite proof of the disability to the insurance company was not made until November 10, 1930, and therefore allowed recovery from that date down to the 31st of August, 1933, which was the limit fixed by plaintiff in his petition, and in addition the trial court allowed the recovery back by the plaintiff of a premium paid to defendant amounting to $330.33, representing the annual premium due November 18, 1930, paid by plaintiff, but recoverable by him under the waiver of premium provisions of the policy.

The two assignments of error which are pressed by the defendant upon this appeal are as follows:

(1) The judgment of the trial court is against the weight of the evidence and is not sustained by sufficient evidence.

(2) The judgment of the trial court is excessive and should be reduced by the sum of $1,146.99 by reason of the following facts:

(a) Certain depositions of witnesses in a new and different case brought by Nemer Razzook against New York Life Insurance Company to recover for disability since August 31, 1933, which depositions were taken after the second trial of the case now being considered on this appeal, disclosed that said Nemer Razzook, plaintiff herein, had engaged in the services of certain wholesale houses in the city of Dallas, Tex., by furnishing such wholesale houses with certain credit

information for which the said Nemer Razzook was paid for the period September 10, 1932, to August 31, 1933, the sum of $816.66, thereby tending to show that the said plaintiff was not totally disabled during said period, in spite of the fact that the judgment appealed from awarded him total disability benefits for said period at the rate of $70 per month; and

(b) Since such depositions showed plaintiff was not totally disabled during said period of time, the waiver of premium provisions of the policy would not be operative, and there would be due to the defendant the sum of $330.33, representing the premium falling due November 18, 1932.

We shall consider the assignments of error relied upon in order.

1. As to the sufficiency of evidence to sustain the judgment. Where a jury is waived the findings of the court are entitled to the same weight and consideration that would be given to a verdict by a jury, and if there is any evidence, including any reasonable inferences, tending to support the findings, the Supreme Court will not reverse for insufficient evidence. Foreman v. Needles, 78 Okla. 105, 188 P. 1087. Was there, then, any evidence reasonably tending to support the finding that the plaintiff was totally and presumably permanently disabled under the provisions of the policy for the period from November 10, 1930, to August 31, 1933.

First it is necessary to consider what the "total" and "presumably permanent" disability provided for in the policy means. The language of the policy in part is as follows:

"Disability shall be deemed to be total whenever the insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit."

This language is very simi'ar to the language of an insurance policy considered by this court in the case of Continental Casualty Co. v. Wynne, 36 Okla. 325, 129 P. 16, so much so, in fact, that we are unable to discern any material difference. In that case the court said:

"We gather from the briefs that the several instructions, the giving of which is complained of, are objected to on account of the statements they contain regarding the term 'total disability.' The policy indemnifies against **'injury which causes at once total and continuous inability to engage in any occupation.'** (Emphasis ours.)

"The court after instructing that before plaintiff could recover it must be shown that the injury caused total and continuous disability to engage in any labor or occupation, then qualified the language by adding 'that even though during the time he claimed to be totally and continuously disabled he did perform some trivial services,' such fact should not, of itself, be so construed 'as to prevent plaintiff from recovering for all of said time, if you find from the evidence that he was at the time of said trivial services unable to have performed them. The test is, not whether the plaintiff did perform any services of any character, but whether the plaintiff was able to perform services of any sort or character,' etc. This instruction was given to cover evidence that, while wounded and unable to work or perform the duties of his office, or to do other labor, plaintiff had handed to some witnesses or jurors a few subpoenaes upon an occasion.

"The business of plaintiff named in the policy is 'deputy sheriff, engaged in making arrests.' We believe the instructions substantially stated the law applicable to the facts of the case. In Joyce on Insurance, sec. 3031, it is said:

" 'The general purpose of such clauses is to furnish an indemnity to assured for the loss of time by reason of accident or injury which prevents him from prosecuting his business, and it would seem that this ought to refer to his inability to perform substantially the duties which are necessary to be done in the business to which the contract refers—an absolute physical inability to perform substantially the duties which are necessary to be done in the business to which the contract refers. An absolute physical inability ought not to be meant in all cases; for the injury might be of such a character as that common care and prudence would preclude the prosecution of said business.'

"Kerr on Insurance, at page 386, announces the same general rule:

" 'Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists, although the insured is able to perform a few occasional acts, if he is not able to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labors so long as was reasonably necessary to effect a speedy cure.'

"And May on Insurance (4th Ed.) 522, says:

." 'Total disability from the prosecution of one's usual employment means inability to follow his usual occupation, business, or pursuits in the usual way. Though he may do certain parts of his accustomed work, and

engage in some of his usual employments, he may yet recover, so long as he cannot to some extent do all parts and engage in all such employments.' "

To like general effect as the case last cited, although not so nearly in point from the standpoint of the language of the policy there being considered, is the case of Ozark Mutual Life Association v. Winchester, 116 Okla. 116, 243 P. 735, in which it is said:

"The action was based on a benefit certificate issued by the defendant to Mrs. M. L. Winchester on the 1st day of November, 1919, which, among other things, contained the following provision:

" 'This certificate becomes payable when the member suffers either the loss of an eye, a hand above the wrist, a foot above the ankle, total permanent disability by accident.' * * *

"It must be borne in mind that Mrs. Winchester in following her occupation as housewife was necessarily required to engage in various employments, all of them, however, being within the scope of her general occupation. After the happening of the accident there were some of these employments which she could not engage in at all. The fact that she might have been able after the accident to engage in some special work, although within the general scope of her former occupation, cannot defeat her right to recover under the terms of the policy involved in the instant case. 'Total disability,' as used in the contract involved here, must be construed to mean the disability which prevented Mrs. Winchester from engaging in the occupation she was following at the time of the disability, and not some other vocation which she might be able to follow after the disability. Foglesong v. Modern Brotherhood (Mo. App.) 97 S. W. 240."

We believe the above cases are sufficient to show what is required for total disability in this case.

The policy here being considered itself says that "disability shall be presumed to be permanent: (a) Whenever the insured will presumably be so totally disabled for life; or (b) After the insured has been so totally disabled for not less than three consecutive months immediately preceding receipt of proof thereof." Either one of these conditions is sufficient to make total disability presumably permanent within the meaning of the policy. The policy does not require actual permanent total disability, although it does require actual total disability as that term has been construed by the courts. If an insured under such a policy as the one here being considered were totally disabled and the total disability continued for more than three consecutive months immediately preceding receipt of proof thereof to the in-

surance company, the disability benefits would be payable under the policy until a recovery from the disability had taken place, and provision is made under section 1, paragraph 6, of the policy, which is as follows: "Recovery from disability. The company may from time to time demand due proof of the continuance of total disability, but not oftener than once a year after it has continued for two years," for the insurance company to satisfy itself that the total disability continues to exist, and if it does not, no further income payments are required to be made.

The evidence in this case showed that the plaintiff was in the mercantile business at Konawa, Okla., and that he conducted and managed the same until February, 1930, but that in February, 1930, he became sick and, although he occasionally went to his place of business after becoming sick, his children had to look after its management. The plaintiff's testimony is to the effect that the plaintiff had not been able to work or earn any money since February, 1930. His face, ears, and feet swelled and he had eruptions all over his body after that time. He could not wear shoes due to his swollen feet. His throat became sore, his tongue burned, and he suffered from dizziness and nervousness and from sleeplessness and from an itching and burning over his body. When he would try to work the trouble was aggravated, he became nervous and had to quit and lie down. Also, he had spells described as "fainting" spells, when he could not catch his breath. Some of the physicians who testified diagnosed his trouble as urticaria and acute angio neurotic edema. One of the physicians who testified diagnosed plaintiff's trouble as acute neurotic edema and eczema. Urticaria was referred to by some of the physicians as being the same thing as hives and nettle rash, although there was no common name given for the angio neurotic edema. Although the testimony of some of the physicians indicated that plaintiff's condition might become better in time, and also indicated that the plaintiff's condition was worse at times than at others and at some periods the plaintiff would be able to move about and perform certain trivial or unsubstantial tasks, we think that the evidence is sufficient to support a finding of total and presumably permanent disability under the provisions of the policy and the decisions of this court.

2. With reference to the assignment of error of defendant that the judgment was excessive and should be reduced, inasmuch as this contention is based upon evidence which does not appear in the record, it cannot be

considered upon this appeal. This court has held many times that questions or matters not presented in the record cannot or will not be considered in the appellate court. United States F. & G. Co. v. Harmon, 92 Okla. 167, 218 P. 682; Tandy v. Garvey, 115 Okla. 214, 242 P. 546.

The judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Joe Gill, Jr., Eldon J. Dick, and W. C. Franklin in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gill and approved by Mr. Dick and Mr. Franklin, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.