## EQUITABLE LIFE ASSURANCE SOCIE-TY v. ROBBINS.

Nos. 24692, 24693—Consolidated.

Dec. 22, 1936.

Rehearing Denied Jan. 19, 1937.

Snyder, Owen & Lybrand, for plaintiff in error.

Leon J. York and Walter Mathews, for defendant in error.

RILEY, J. On July 2, 1932, Mary S. Robbins instituted two separate actions in the district court of Payne county against the Equitable Life Assurance Society of the United States, wherein she sought recovery under two certificates of insurance. There was no consolidation of these cases in the trial court, but the parties admitted that the evidence would be substantially the same in both cases, and by agreement they were tried together. Separate verdicts were returned in favor of plaintiff. Judgments were entered accordingly, and defendant lodged separate appeals. The questions of fact and law involved are substantially the same, and the causes were consolidated by this court.

Hereinafter the parties will be referred to as in the trial court.

The defendant issued two policies of group insurance to the Shaffer Oil & Refining Company, which afterwards became the Deep Rock Oil Corporation, whereby it insured employees of said company against death or permanent disability under conditions set out in the policies.

It also issued individual certificates under each of said policies to George N. Robbins, an employee of said company.

The master or group policies were of two types, one noncontributing, where the entire cost of insurance was paid by the employer, the other a "contributing" policy under which the participating employees paid a part of the premium.

The noncontributing policy was for the principal sum of $1,000, with a provision for increase of $250 per year for a certain number of years the employee remained in the service of the employer, and ceased immediately upon the termination of that relationship, except in case the insured employee while so employed, and before attaining the age of 60 years, should become wholly disabled by reason of bodily injury or disease, and presumably prevented there-

by from thereafter pursuing all gainful occupations, in which event, upon proof thereof as provided in the policy, the defendant agreed to pay, six months after such proof, the full amount of insurance, either in a single payment or in monthly installments.

Under the contributing policy the insurance did not cease upon the termination of the relationship of employer and employee, but remained in force for a period of 31 days thereafter, with the further provision that the employee might during said period convert the policy to any form of policy issued by the insurer, except term insurance, without medical examination, and by payment of the usual premiums for the policy selected as applicable at the then attained age of the insured. This policy also contained the same provision as the contributing policy with certain exceptions relative to total permanent disability.

These actions were commenced by plaintiff as beneficiary under provisions of the policies that:

"Any disability installments remaining unpaid at the death of the employee shall be payable as they become due to the beneficiary, with the right to commute at 3½% per annum."

It is conceded that if plaintiff was entitled to recover under said policies, the amount payable under the noncontributing policy was $1,250, and under the contributing policy, $2,000.

These verdicts and judgments were in these amounts respectively.

Plaintiff in her petitions alleged that on or about December 27, 1930, said George N. Robbins, while in the employ of the Deep Rock Oil Corporation, sustained a personal injury to his back and neck, and that as a result thereof, on or about July 1, 1931, became wholly and permanently disabled from ever engaging in any occupation or performing any work for compensation or financial value. That thereafter and on May 31, 1932, the said George N. Robbins departed this life. Plaintiff then pleaded the beforementioned policies of insurance and the individual certificates issued thereunder and that plaintiff was the beneficiary named in said certificates and was entitled to the sums therein set forth; that payment had been demanded of, and refused by, the defendant, and prayed judgment of the court. After demurrers were filed and overruled, the defendant answered, denying generally the allegations of the plaintiff's petition, admitting the issuance of the master policies of insurance and the individual certificates thereunder, and specifically denying liability on the ground that the said George N. Robbins had, on June 3, 1931, ceased to be an employee of the employer named in said group policies of insurance, and that thereby said certificates ceased and terminated. The defendant further admitted the provisions of each certificate relative to payment in case of permanent total disability, but denied that the said George N. Robbins had, during his lifetime, and the effective period of said certificates, sustained any disability under said provisions. Further pleaded the clauses contained in the master policies providing the manner which the insurance thereunder should terminate, and also alleged failure upon the part of the plaintiff to give notice as required by the certificates. Replies were in the nature of general denials.

The policies sued upon were issued about January 1, 1930.

The policies contained a provision:

"In the event that any employee while insured under the aforesaid policy and before attaining the age of 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation or financial value, upon due receipt of due proof of such disability before the expiration of the year from the date of its commencement, the society will, in termination of all insurance of such employee under the policy, pay equal monthly disability installments, the number and amount of which shall be determined by the table of installments below."

Under said table the $2,000 policy called for 40 installments of $52.50 each. A like provision was contained in the noncontributing policy, which provided for five installments of $212 for each $1,000 insurance proceeds.

The employment of Robbins by the Deep Rock Oil Company terminated June 3, 1931. He died about May 3, 1932.

The principal question was whether the insured became totally and permanently disabled by bodily injury or disease under the policies.

It is contended by defendant that both the pleadings and testimony show clearly that Robbins was not an employee of the company after June 3, 1931; that on said date he was able-bodied and had done his regular work; that he did not become totally disabled while an employee of the company, nor for a long time thereafter; and there-

fore there was no issue of fact for the jury, and that the court erred '(a) in not sustaining defendant's demurrer to plaintiff's petition; (b) in not sustaining defendant's demurrer to plaintiff's evidence, and (c) in not sustaining defendant's request for a directed verdict for defendant.

That Robbins' employment terminated June 3, 1931, is not questioned.

The issue as to whether he had become totally permanently disabled within the meaning of the policies, and before his employment had terminated, was submitted to the jury under appropriate instructions, and the jury by the verdicts found that he had become so disabled.

The question then is whether there is any evidence reasonably tending to support the verdicts of the jury on this issue.

There is such evidence.

The uncontroverted evidence is that insured worked for the company to December 27, 1930, except for a few days in November of that year; that he was unable to perform any work from December 27, 1930, to June 2, 1931; that the Oil & Refining Company carried him as an employee during all that time, as it had a right to do under the policies; that he returned to work on June 2, 1931, and worked eight hours that day. He also worked until 1:18 p. m. of the next day, at which time he was laid off, or discharged, or quit work. That he was unable to perform any labor thereafter until he died about May 3, 1932. There is no substantial conflict in the evidence as to his disability during all that time except as to the 13 hours he worked June 2nd and 3rd. There is some contention as to whether his disability was the result of a personal injury or of sickness. That we deem immaterial under the terms of the policies. It is true that plaintiff alleged a personal injury, and the evidence shows that insured was drawing benefits from another association of which he was a member, and that the benefits were claimed for sickness rather than accidental injury, and that the by-laws of that association provided for payment of benefits for sickness of $2.50 per day, while for accidental injury only $1.

There was some evidence of a personal injury, as testified to by Dr. Elliott, a chiropractor doctor. There was also some evidence that he was suffering from sickness. But whether either or both is immaterial if he was in fact totally and permanently disabled. Nor would the fact that

he might have been paid benefits by another association for sickness when he was entitled to benefits for injury only be material.

The record shows that Mr. Robbins returned to work June 2, 1931, and worked that day and the next day until 1:18 p. m. There is some controversy whether he returned to work voluntarily or was ordered or directed by his employer to return to work. But that we also consider immaterial. His work was apparently satisfactory and it is almost entirely upon this 13 hours' work that defendant relies to show conclusively that Mr. Robbins was "able-bodied", and was not totally disabled. But it must be borne in mind that for nearly six months prior thereto and thereafter until the day of his death insured was not able to do any work. We cannot say as a matter of law that the evidence showed conclusively that insured was not totally disabled within the meaning of the policy at and prior to June 3, 1931, or that his disability was not permanent.

In Ozark Mutual Life Ass'n v. Winchester, 116 Ok'a. 116, 243 P. 735, it is held:

" 'Total disability,' under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists though the insured may be able to perform a few occasional or trivial acts relating thereto if he is not able to do any substantial portion of the work connected with his occupation."

The true test of total disability is whether the earning power of the insured is destroyed. Wall v. Continental Cas. Co. (Mo. App.) 86 S. W. 491.

This is true because the only purpose of insurance against total disability is to protect the insured against loss of his earning power. It is in comparatively few cases of disability that the insured is not able to perform labor of some kind. In many cases of sickness extending over a long period of time there will be some days when the patient will be able to perform some labor, for a few hours, and in many cases he will think himself able to return to work, but when the effort is made, finds that he is not able to continue with the work.

If the condition of the insured, prior to June 2 and 3, 1931, was such that his earning capacity was wholly destroyed in substance, then, notwithstanding the fact that he did work 13 hours after which he was unable to perform any labor until his death, some eleven months thereafter, he was to

all intents and purposes wholly and permanently disabled within the meaning of the policies.

In this case, for the purpose of collecting premiums on the policy, defendant was willing to consider and treat the insured as employed within the meaning of the policies. Though he did no work for nearly six months, but because he was able to do light work (washing barrels) for 13 hours, defendant says it conclusively shows that he had become an able-bodied man. We cannot agree with such narrow construction of the contract.

There was no error in refusing to sustain the demurrer to plaintiff's evidence, nor in refusing a directed verdict.

It is contended that the court erred in instruction No. 5, relative to the meaning of the words "total disability" used in the policies. But the instruction given is in conformity with the views herein expressed and has the approval of this court in Continental Cas. Co. v. Wynne, 36 Okla. 325, 129 P. 16, and Ozark Mut. Life Ass'n v. Winchester, supra.

Defendant seeks to distinguish those cases because of the addition in the policies here sued upon of the words "presumably permanently prevented thereby from pursuing any and all gainful occupation."

We cannot see wherein these words add anything to or extend the meaning of the words "wholly disabled." The office of the added words is to require proof not only that the insured had become "wholly disabled", but that he would presumably be wholly and permanently prevented thereby from pursuing any and all gainful occupations. That is to say, to require proof that the nature of the disability, whether caused by sickness or injury (or both), was such as to raise a presumption that the disability would be permanent.

Complaint is made of the admission of improper evidence. The only matter complained of is where the plaintiff testified:

"Q. During the time from the time he— from December 27, 1930, up until the time of his death—did he perform any work? A. Nothing only when he went back to try to work and he knew he wasn't able—By Mr. Owens: Move to strike that out. By Mr. Mathews: Yes, it should be."

The court denied the motion and properly so. That part of her answer where witness said, "When he went back to try to work and he knew he wasn't able", was objectionable, but the motion was not directed to that part of the answer, but the answer as a whole. It is clear where a part of the answer to a question is proper and admissible and a part not, a motion to strike the entire answer is not good.

The argument is not directed to the ruling of the court, but to the language used by the court wherein he said:

"By the Court: Well, now we are not trying a criminal case, or anything like that and the court is not going to stop and strike out a word or two in a civil case of this importance."

The remark was uncalled for and by no means proper, but we do not think it so prejudicial as to require a reversal.

The same may be said of other remarks by the court. While they may be improper and uncalled for, they are not of such nature as to improperly influence or prejudice the jury.

Finally it is asserted that the policy called for and required proof of disability before the expiration of one year from the date of the commencement, and that no such proof was given. The proof was clearly waived on March 17, 1932; counsel for plaintiff wrote defendant to the effect that the insured had suffered total disability within the meaning of the policy and requested forms for proof thereof, or that defendant suggest the form of proof required. And on June 20th defendant wrote to counsel for plaintiff:

"* * * The disability clause in this certificate provides for the payment of benefits in the event that the insured becomes totally and permanently disabled as further defined in the certificate while insured under the policy and before attaining age 60.

"The circumstances in this case did not indicate that this insured became totally and permanently disabled while insured under the policy. Therefore, there was no basis for a claim."

There is no merit in this contention. N. Y. Life Ins. Co. v. Razzook, 178 Okla. 57, 61 P. (2d) 686.

Judgment in each case is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.