**W. F. RUSHING, Plaintiff,**

v.

**The TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant.**

**Civ. No. 3669.**

United States District Court
E. D. Oklahoma.

Aug. 9, 1955.

Charles R. Nesbitt, Oklahoma City, Okl., for plaintiff.

George & George, Ardmore, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, W. F. Rushing, an Oklahoma citizen, brings this action against the defendant, The Travelers Insurance Company of Hartford, Connecticut, a Connecticut corporation, to recover proceeds allegedly due plaintiff as an insured under a group life policy issued by the defendant (herein referred to as "Travelers").[1] The sole issue is wheth-er, as provided in the policy, the plaintiff has become "wholly disabled by bodily injuries" so as to be prevented "from engaging in any occupation or employment for wage or profit."[2]

In 1949 the plaintiff, while working as a roustabout for Pure Oil Company, sustained a back injury; this resulted in a disc removal. In September of 1950, after having returned to work, plaintiff received a second injury to his back. On October 6, 1950, plaintiff was operated; a ruptured intervertebral disc at the lumbar 4–5 space on the right side was removed and a spinal fusion made. Considering the nature of the operation, plaintiff has made an excellent recovery; and, is now able to get around with no acute pain or distress.[3] However, because of this back condition he will never again be able to do heavy lifting; and, will always be restricted to sedentary work.

On January 17, 1952, the plaintiff and his employer entered into a compromise settlement before the Oklahoma Industrial Commission from which plaintiff received $2,500. The papers on file therein indicated that plaintiff's injury had caused about 25% disability to his body as a whole. In June of 1952, after an examination by a company doctor, Travelers began monthly payments under the total disability clause of the contested policy. These monthly payments were continued through December of 1952 at which time such payments were discontinued because the plaintiff was elected

1. Policy No. G–3785 issued to The Pure Oil Company and/or its subsidiary and affiliated companies, effective Oct. 1, 1932. See Certificate No. 31533 dated January 1, 1948, recognizing plaintiff as an employee-beneficiary.

2. The Permanent Total Disability Benefits clause provides: "If any Employee shall furnish the Company with due proof that while insured under the Group Life Policy and before having attained the age of sixty, he has become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employ-ment for wage or profit, the Company will waive further payment of premium as to such Employee and pay in full settlement of all obligations to him under the Group Life Policy the amount of insurance in force thereunder upon his life at the time of the receipt of due proofs of such disability, in a fixed number of instalments * * *".

3. He has little tenderness in the lower back; and, has active tendon reflexes. He does have some numbness in the right hip; and has ½ inch atrophy in the right thigh together with ¼ inch atrophy in the right calf.

and began to serve as Sheriff of Marshall County, Oklahoma.[4]

■ Of course, the substantive law of Oklahoma governs the instant suit.[5] However, inasmuch as there are no Oklahoma decisions directly in point, the Court, to resolve the question at hand, has also carefully studied leading authorities from various other jurisdictions, and, has concluded that the plaintiff, at the present time, is entitled to the "Permanent Total Disability Benefits" provided for in the instant policy.

■ The Oklahoma decisions, and the clear weight of other authorities, do not interpret the provision in question to require the insured to be physically and mentally helpless before the policy provision is effective.[6] This more liberal, not strictly literal, approach is based upon the rationale that the insurer cannot be permitted to so circumscribe its liability that no practical protection is given the insured.[7] Many decisions deem effective policies similar to the instant one if the insured is disabled sufficiently as to be unable to carry out the substantial requirements of his occupation in which he is engaged at the time of procuring the insurance and injury; and, even though other occupations or callings can be followed, if the insured is unable to further work at his original or usual vocation he is "totally disabled" insofar as policy applicability is concerned.[8] Although the Oklahoma courts have not gone so far as to expressly sanction this very liberal interpretation, a construction which in effect obliterates and rewrites policy wording,[9] the Oklahoma decisions do, by clear implication adopt the majority and modern rule which although recognizing that under the plain policy terms the insured must be unable to follow "any occupation" (as distinguished

---

4. When discontinued, the monthly payments totalled $552.16.

5. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Stirk v. Mutual Life Ins. Co. of N. Y., 10 Cir., 1952, 199 F.2d 874; Occidental Life Ins. Co. v. Marmaduke Corbyn Agency, 10 Cir., 1951, 187 F.2d 553.

6. For example, see New York Life Ins. Co. v. Razzook, 1936, 178 Okl. 57, 61 P.2d 868; Equitable Life Assur. Soc. of the United States v. Robbins, 1937, 179 Okl. 1, 64 P.2d 273; Equitable Life Assur. Soc. of United States v. Davis, Okl., 1943, 137 P.2d 548. Cf. the remark of the annotator in 149 A.L.R. p. 11: "Nearly all the decisions agree, either expressly or by necessary implication, that the clause in an accident policy or in a life policy providing for payment of indemnity in case the insured is totally or wholly disabled from engaging in any occupation or employment for wage or profit will not be construed, as a literal construction would require, as meaning a state of absolute inability to carry on any vocation whatever, but will be given a broader interpretation in favor of the insured in accordance with the so-called liberal rule of construction."

7. As mentioned in Hefner v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 1913, 160 S.W. 330, 334: "* * * A literal interpretation of the contract, with reference to this phase of the case, would require a complete loss of all physical power and mental capacity; in fact, it would scarcely happen that one could live and bring himself within the literal language of the contract." And as observed in Marshall v. Metropolitan Life Ins. Co., La.App., 1935, 164 So. 441, 442: "If this clause is to be strictly construed, there could be no recovery in this case, or, for that matter, with very rare exception, in any case, for it is difficult to conceive of a condition in which a living human being would be totally unable to perform 'any work for compensation or profit.' "

8. See compilation of authorities at 149 A.L.R. pp. 40, 41, and 42.

9. As noted in Mutual Life Ins. Co. of New York v. Bryant, 1944, 296 Ky. 815, 177 S.W.2d 588, 592, 153 A.L.R. 422: "* * * The minority rule is generally referred to as the 'liberal' rule of construction, but we think it is so ultra liberal as to surpass all rules of construction, since it changes the meaning of plain and unambiguous language. 'Liberal construction' does not mean that words should be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation so as to attain the objects for which the instrument is designed and the purpose to which it is applied. (Citing authorities.)"

from his original or usual one) before being entitled to payments, takes into account factors such as the insured's education, experience and ability to follow another vocation, together with the dignity, permanency and amount of income which can be earned from the substituted or alternative occupation.[10] The logic behind this approach is that the phrase "any occupation" as used in the policy must be construed to mean some occupation at least reasonably related in remuneration and dignity to the occupation being followed when the policy was procured; and, that both insurer and insured must be held to have assumed that the insured was being given some practical protection against a drastic cut in income and loss of job security.

▇ Travelers' sole defense and reason for now repudiating its prior finding of total disability is plaintiff's present activity as sheriff. However, such defense is ineffectual when judged in the light of the previously designated standard.

Plaintiff, a man of limited education, is 41 years of age; he has spent a number of years as an oil field roustabout and from the standpoint of experience is only qualified to do such or similar work. When disabled he was capable of earning $80, or more, per week, and had that security together with other incidental benefits enjoyed by those employed by a well established company. It is now agreed, by both parties, that plaintiff never again will be able to return to the oil fields, but always will be restricted to sedentary work. Plaintiff as sheriff is now receiving only a little over one-half the amount he could now earn were he able to follow the only occupation for which he is actually qualified.[11] In addition to sustaining a substantial decrease in income his presently referred to "occupation" of sheriff, has absolutely no stability or fringe benefits found in most occupations, and particularly found in plaintiff's original occupation. His security is totally dependent upon the will of the local people; and, is in no way necessarily related to his physical condition or ability to serve. Undefinable intangibles control his future.[12] The plaintiff, a man primarily dependent upon his strong physique to earn a livelihood, for all practical

10. "There can be no general rule governing the question of whether one is totally and permanently disabled from engaging in any occupation and performing any work for compensation or profit. It must depend upon the capabilities of the insured. It is, therefore, a question for the jury to determine taking into consideration the training, experience, education and physical condition of the insured. (Citing authorities.)" Metropolitan Life Ins. Co. v. Brown, 1942, 190 Okl. 338, 123 P.2d 255, 257. Cf. American Nat. Ins. Co. v. Story, 1936, 178 Okl. 519, 63 P.2d 33; and, Continental Casualty Co. v. Wynne, 1912, 36 Okl. 325, 129 P. 16. Also, cf. 149 A.L.R. p. 44: "It has been held in a great number of cases that the term 'total disability' as used in insurance policies providing for benefits in case the insured is totally disabled from engaging in any occupation or employment for wage or profit is a relative one depending in a large measure upon the character of the occupation of employment and the capabilities of the insured, and upon the circumstances of the particular case. And while under this rule it is not sufficient, in order to recover under the disability clause, that the insured is disabled from engaging in his usual business or occupation, he need not be disabled from following any occupation whatsoever regardless of its character."

11. When first elected sheriff plaintiff received $195 per month; however, in 1955 plaintiff was given a $75 per month increase. If able to work in the oil fields plaintiff could now earn approximately $100 per week.

12. Cf. the following cases which hold that political jobs do not constitute an "occupation" as used in insurance policies. Woods v. Central States Life Ins. Co. of St. Louis, Mo., 1937, 132 Neb. 261, 271 N.W. 850; Mutual Life Ins. Co. of New York v. Marsh, 1933, 186 Ark. 861, 56 S.W.2d 433; Great Southern Life Ins. Co. v. Johnson, Tex.Com.App., 1930, 25 S.W.2d 1093; Mutual Life Ins. Co. of New York v. Barron, 1943, 70 Ga.App. 454, 28 S.E.2d 334; Dukes v. Jefferson Standard Life Ins. Co., 1934, 172 S.C. 502, 174 S.E. 463; and, Deckert v. Western & Southern Life Ins. Co., D.C.Ky.1943, 51 F.Supp. 44.

purposes has had such ability taken from him and is totally unable to follow "any occupation" properly recognizable as an occupation or comparable to his occupation previously enjoyed. Conceivably, in the future circumstances may change. The plaintiff, through training and adaptation may become qualified to pursue another "occupation". If such occurs, the defendant's liability will cease. However, at this juncture, all evidence before the court indicates the plaintiff is unable to follow any occupation or employment for profit as referred to in the insurance contract, and Travelers cannot deny liability solely because plaintiff evidenced a desire to not remain totally inactive but to augment, with an outside income, his small monthly disability check.

Plaintiff is entitled to the total disability monthly payments promised in the policy; and, is specifically entitled to a money judgment for those monthly sums unpaid since January 1, 1953, plus interest.

Within 15 days counsel should submit a journal entry which conforms with this opinion.