McGUIRT et al. v. SANDRIDGE et al.

No. 33902.   Dec. 12, 1950.
Rehearing Denied March 20, 1951.

*229 P. 2d 171.*

Joy G. Clayton, John W. McCune, and Paul Edwards, Tulsa, for plaintiffs in error.

H. F. Fulling, Tulsa, for defendants in error.

O'NEAL, J. This is an appeal from a judgment entered in the court of common pleas of Tulsa county in favor of defendant in error, Mrs. B. J. Sandridge, plaintiff below, on the pleadings and opening statements of counsel.

The action was commenced against Hugh McGuirt, as principal, and Claude McDowell, J. H. Goodwin and Charlie Love, as sureties, on two bonds, one a redelivery bond and the other a supersedeas bond, given by defendant McGuirt in a replevin action in said court.

It was later made to appear that the defendant Claude McDowell did not sign both bonds and the action was dismissed as to him.

We gather from the pleadings, the opening statement of counsel for defendants, and the statement of facts in the briefs of counsel, substantially the following: Some time prior to November, 1946, one Jewell Fountain was the owner of certain personal property consisting of tables, chairs, window curtains, linoleum, one cook stove, one ice box, one beer box, one bar counter, dishes, silverware, one wood counter stool and ten beer cases, which was being used by Fountain in conducting a night club or beer parlor in a building owned or controlled by McGuirt, or by McDowell and McGuirt; that McGuirt and McDowell put Fountain out of possession and McGuirt retained possession of the personal property above mentioned; that McGuirt, while in possession of said property, mortgaged the same to the Commerce Acceptance Company to secure a loan of $109.57; that about November 21, 1946, Jewell Fountain commenced an action in the court of common pleas of Tulsa county against McGuirt and McDowell to replevin said personal property, the same being case No. 30527 in the court of common pleas of Tulsa county. A writ of replevin was issued directed to the sheriff of Tulsa county, whereupon McGuirt and McDowell executed a redelivery bond in the sum of $1,100 with Charlie Love and J. H. Goodwin as sureties. Said bond was approved by the sheriff and the property was redelivered to McGuirt. Thereafter said replevin action was tried, and on February 17, 1947, judgment was rendered therein in favor of plaintiff, Jewell Fountain, for the possession of said personal property, or its value fixed at $500, subject, however, to the mortgage of Commerce

Acceptance Company. Motion for new trial was filed and overruled, and defendants gave notice of intention to appeal to the Supreme Court, and supersedeas bond was fixed at $1,000. March 5, 1947, McGuirt, as principal, and J. H. Goodwin and Charlie Love, as sureties, executed and filed a supersedeas bond in the sum of $1,000; said bond was approved by A. L. Harbison, judge of the court of common pleas. Extension of time to make and serve case-made was given. No appeal was perfected and the judgment became final. On March 13, 1947, Jewell Fountain sold, assigned and transferred to Mrs. B. J. Sandridge, plaintiff herein, all his rights, title and interest in and to said judgment and all his rights, title and interest in said personal property, including the liability of all the defendants upon said redelivery bond and upon said supersedeas bond.

Thereafter, on January 30, 1948, Mrs. B. J. Sandridge commenced this action against Hugh McGuirt, Claude McDowell, J. H. Goodwin and Charlie Love to recover the sum of $500, the value of said personal property as fixed by the court in the replevin action. But, as stated above, when it was called to the attention of the court that Claude McDowell had not signed the supersedeas bond, plaintiff dismissed her action as against McDowell and he is out of the case.

Plaintiff, in her petition, in substance, set forth the foregoing, and further alleged that defendants had failed to perform the conditions of said supersedeas bond and had failed to deliver the property and had failed to pay the $500 fixed as the value thereof. They were, therefore, liable to the plaintiff in the sum of $500, for which sum she prayed judgment.

A copy of the redelivery bond and a copy of the supersedeas bond were attached to and made a part of her petition. The petition alleged that a copy of the assignment of the judgment from Jewell Fountain to plaintiff, Mrs. B. J. Sandridge, was attached to the petition as Exhibit 3, but the case-made does not contain such copy.

On motion of defendant Hugh McGuirt, Jewell Fountain and one Johnnie Williams were made parties defendant. It further appears that after the judgment in the case of Fountain v. McGuirt was rendered, Johnnie Williams procured an assignment to him of the chattel mortgage of the Commerce Acceptance Company, and thereafter brought suit in the same court of common pleas (case No. 30976 in the court of common pleas) against McGuirt, McDowell, and Love for the possession of that part of the property covered by said chattel mortgage; viz., 6 maple tables, 24 chairs, cooking stove (one Quick-Meal gas range), 1 ice box and 1 bar counter. Judgment by default for the possession thereof was later entered in favor of Williams.

Plaintiffs, in the present action, assert in their brief, and it is not denied, that said property covered by said chattel mortgage was sold pursuant to the replevin action of Williams and said chattel mortgage.

Defendant McGuirt filed his separate answer and cross-petition in the present action consisting of a general denial of all the allegations in plaintiff's petition, except such as were in said answer specfically admitted. He then alleged as a further answer and defense that plaintiff herein, in collusion with Jewell Fountain and Johnnie Williams, and by concealment and misrepresentation, practiced a fraud upon defendant, and upon the court, in the procurement of the judgment in the original action in replevin brought by Jewell Fountain; that case No. 30527 was filed and prosecuted in the name of Jewell Fountain when in truth and in fact said Jewell Fountain, in collusion with plaintiff herein, was acting for said plaintiff and using his name only for the use and benefit of said plaintiff, and for the purpose of defrauding this defendant; that the in-

terest plaintiff claimed in said property had been transferred to her long before Jewell Fountain commenced his action in replevin; that said transfer was concealed from defendant for the purpose of practicing a fraud upon the defendant and upon the court; that said judgment was obtained in said court by the wrongful and corrupt perjury of Jewell Fountain relative to the ownership of said property; that the judgment of February 17, 1947, in cause No. 30527, should be vacated and set aside. The prayer of defendant McGuirt as to his first defense was:

"That the judgment in cause No. 30527 be vacated and set aside, and a new trial granted to the defendant herein."

For further answer and defense defendant McGuirt alleged that shortly after judgment was rendered in said cause No. 30527, defendant McGuirt decided not to appeal and went to plaintiff, Sandridge, and told her that he was ready to turn all the property over to her if she would satisfy the mortgage of the Commerce Acceptance Company thereon; that she said she would go and look at the property, and if it was in good condition, she would accept it in full satisfaction of the judgment; that she then went with defendant, examined the property, and said she approved the deal and would accept it in full satisfaction of the judgment which had been assigned to her, and she then took part of the property, loaded it into her car and took it home with her; that she then gave defendant a check payable to the Commerce Acceptance Company for the balance due on the mortgage and notified her attorney that the judgment was being satisfied and her attorney prepared a release of said judgment to be signed by her, and made definite arrangements for all of the property to be turned over to her in full accordance and satisfaction of said judgment in case No. 30527; that plaintiff herein definitely agreed to accept said property; that later defendant McGuirt learned that plaintiff herein, in collusion with Johnnie Willams, and for the purpose of defrauding defendant McGuirt did, on May 13, 1947, take possession of practically all the balance of said property and has ever since been in complete possession and in daily use of the same; that that portion of the property of which she then took possession was "six maple tables, 24 green padded chairs, one Quick-Meal gas range, one White Mountain grand ice box and one counter; of the total appraised value of $380.00." (Incidentally, that is the same property for which Johnnie Williams obtained judgment as being covered by the chattel mortgage in case No. 30976.)

As to how defendant McGuirt claimed plaintiff, Mrs. B. J. Sandridge, had obtained possession of said property, defendant McGuirt alleged:

"That in furtherance of her plan to defraud this defendant, plaintiff in collusion with the defendant, Johnnie Williams, took an assignment of this defendant's note and chattel mortgage held by the Commerce Acceptance Company of Tulsa, Oklahoma, upon which there was a balance due of $109.57, in which mortgage the above described property was given as security; that said mortgage assignment was fraudulently taken in the name of Johnnie Williams, when in truth and in fact the money furnished for the purchase of said assignment was paid by the plaintiff herein. That the plaintiff is now in possession of all of said property and has had the full and complete possession of the same at all times since May 13, 1947, and has been in daily use of the same."

He then alleged that by the above means plaintiff had obtained possession of all the property involved in case No. 30527:

" . . . Except the following items of said property, to-wit:

| | |
|---|---|
| 6 | window curtains |
| 2 | linoleum |
| | Dishes, silverware, cooking utensils, |
| 10 | beer cases |
| 10 | Cloth window curtains |

1 beer box
1 wood counter
1 stool

which items are in the possession of this defendant, and this portion of said property has been tendered to the plaintiff by this defendant, in compliance with said judgment in said Cause No. 30527, and the plaintiff has refused and still refuses to accept the same."

(That list, together with the list covered by the chattel mortgage, includes all the property involved in case No. 30527, which would leave no property which plaintiff could have taken in her car on May 13, 1947.) The prayer to his second defense is that plaintiff take nothing in this action, and that she be required to accept the balance of said furniture and furnishings as she agreed to do, in full satisfaction of the judgment in case No. 30527, and for costs.

By cross-petition said defendant McGuirt realleged all the allegations contained in his answer, and further pleads, in the alternative, that if the court should adjudge that plaintiff be not required to accept the return of all of said property in full satisfaction of her judgment in case No. 30527, then, and in that event only, he tenders to said plaintiff and said defendants Johnnie Williams and Jewell Fountain the sum of $109.57, plus interest and costs in redemption of said property. He further alleged that plaintiff herein and defendant Johnnie Williams have never foreclosed the chattel mortgage assigned to them by the Commerce Acceptance Company, which mortgage was given by defendant McGuirt, and the defendant is entitled to redeem the same and satisfy said mortgage.

He further alleged that said defendants have wrongfully and willfully used or permitted to be used said furniture and equipment in a business conducted on the premises of plaintiff, Mrs. B. J. Sandridge, without the consent of the defendant, and the defendant is entitled to the reasonable rental value of said property, alleged to be $40 per month, for a period of ten months, and the further sum, for the alleged hard use of said property and consequent depreciation in value thereof, the sum of $200. He prays that, in the alternative, the court direct that the tender of this defendant of the sum of $109.57, plus costs in the sum of $14.20 and interest in the sum of $6, be accepted by plaintiff, and that all of said property be returned to defendant, and that defendant have and recover the sum of $400, the reasonable rental and use value of said property, and $200 damages.

The answer of defendant J. H. Goodwin is substantially the same as the answer of defendant McGuirt, except that he filed no cross-petition. It does not appear that defendant Charlie Love filed any answer.

The case was set for trial before a jury. The jury was impaneled to try the issues. Counsel for plaintiff made his opening statement which was not taken by the reporter and is not included in the case-made. Thereupon, counsel for defendant made their opening statement at the close of which plaintiff moved for judgment in her favor on the pleadings and opening statement of counsel. The motion was sustained, the jury was discharged, and after dismissal by plaintiff as to defendant Claude McDowell, the court rendered judgment for plaintiff in the sum of $500. Defendants McGuirt, Goodwin, and Love appeal. Defendants McGuirt and Goodwin filed a joint petition in error, and defendant (Charles) Love files a separate petition in error.

The opening statement of counsel for defendants, and the proceedings in connection therewith, cover some 26 typewritten pages in the record and is too long to set forth in detail.

The substance of the opening statement was that defendants would attempt to prove that the original judgment in replevin obtained by Jewell Fountain was obtained by fraud and collusion between the plaintiff and Jewell Fountain, and that Jewell Foun-

tain was not the owner of the property involved at the time said replevin action was commenced; that plaintiff herein, Mrs. B. J. Sandridge, was and has been for a long time the owner of said property involved, and was using the name of defendant Jewell Fountain for the sole purpose of defrauding defendant McGuirt, and practicing a fraud upon the court; also that Johnnie Williams, in procuring the assignment of the chattel mortgage on the property which McGuirt had given while it was in his possession (but not owned by him), was acting in collusion with plaintiff herein, in that plaintiff furnished Williams the money with which to procure the assignment of said chattel mortgage, and that Williams was, in fact, acting for and in behalf of plaintiff in procuring said assignment in and prosecuting the action brought by Williams, case No. 30976, and that the judgment obtained by Williams in case No. 30976 was also procured by collusion and fraud between plaintiff herein and Johnnie Williams.

Upon objection by counsel for plaintiff, the court, in substance, called attention of counsel for defendants to the fact that defendant's whole defense as proffered was only an attack upon the two judgments previously rendered in said court, which judgments had become final. At one place counsel for defendants stated with reference to the case No. 30527:

"We plead in our answer and cross-petition that fraud was exercised in the procurement of said judgment."

and at another place the record shows that counsel for defendants stated: "Well, we are here to try that point."

The trial court then stated the substance of the whole matter as follows:

" . . . This case has to be tried this afternoon. The other law suit was settled, and if you were not satisfied, you had a remedy. Two of them, and you can't come in now and bring in that other law suit. That is what you have been trying to do."

From the pleadings as a whole and the opening statement of counsel for defendants, it appears that defendant's entire defense and his proposed evidence was nothing more than an attack upon the validity of the two judgments theretofore entered in said court.

In United States F. & G. Co. v. Harmon, 92 Okla. 167, 218 P. 682, it was held:

"In an action in replevin, where a final judgment is entered that the property taken under a writ of replevin should be restored to the defendants, or that they should be paid the value thereof, in an action against the surety upon the replevin bond for failure of the plaintiff to return the property, or pay the value thereof, such surety cannot attack said judgment, except for want of jurisdiction of the parties or the subject-matter of the action, and it matters not that such judgment may be erroneous, not having been appealed from, it is final and becomes the law of the case and the parties are bound thereby."

The same holding was made in United States F. & G. Co. v. Yoder, 139 Okla. 256, 281 P. 974. In the latter case it was also held:

"Where the evidence clearly shows that the plaintiff is entitled to recover, and the only dispute is as to immaterial issues, it is not error for the court to direct a verdict."

There being no issue of fact sufficiently pleaded, there was not error in entering judgment for plaintiff on the pleadings.

Affirmed.

DAVISON, C.J., ARNOLD, V.C.J., and GIBSON, LUTTRELL, and JOHNSON, JJ., concur. WELCH, CORN, and HALLEY, JJ., dissent.

HALLEY, J. (dissenting). Judgment was entered in this case for the plaintiff on the pleadings and the opening statement of counsel. If the defendants set up any defense in their pleadings

and opening statement which brought up a question of fact, they were entitled to submit it in a trial. In this case, they plead that the plaintiff had agreed to accept the return of the property in full satisfaction of her judgment against them. This statement was made in the opening statement of defendants' counsel. In my opinion, this is sufficient to justify the admission of evidence on this question, and it was error for the trial court to render judgment on the pleadings and the opening statement. If the plaintiff did agree to accept the property in full settlement of the judgment, it makes no difference whether or not there was merit to the other questions raised by the defendants. This fact alone was sufficient to require the trial of the case and the reception of evidence on this question. We have held many times that a motion for judgment on the pleadings and opening statement of counsel cannot be sustained where there are issues of fact to be determined.

I dissent.

### On Rehearing.

O'NEAL, J. In their petition for rehearing plaintiffs in error, for the first time, contend the trial court erred in rendering judgment for defendant in error for the reason she did not allege and prove that the obligation sued on had been listed for taxation, and taxes paid on same, as required by the Intangible Tax Law, 68 O.S. 1941 §§1501, 1509, and 1515. This contention is without merit. The obligation sued on is a procedural bond. Liability on a procedural bond is contingent, and not subject to the provisions of the Intangible Tax Law.

In 51 Am. Jur., Taxation, §425, p. 446, it is stated:

"An unliquidated claim for damages cannot be taxed, for the obvious reason that until the matter has been determined by appropriate tribunal no liability exists; nor is a contingent liability taxable as property. Notes taken by mutual insurance company from its members, which are payable only in case payment is necessary to meet losses, are not taxable."

See Kentucky & Louisville Mutual Insurance Co. v. Commonwealth of Kentucky, 153 Ky. 824, 156 S. W. 897, 45 L.R.A. (N.S.) 597. In the body of the opinion it is said:

"Thus accident policies, employers' liability policies, bonds of indemnity required in court proceedings, are all contracts to pay money upon a contingency, but none of them are subject to taxation, because they have no present cash value."

In Stevenson v. Wescott, 187 Okla. 208, 102 P. 2d 172, it is held:

"A supersedeas bond is a part of the court records and is not subject to the chose in action tax provided in sec. 12363, O. S. 1931, 68 Okla. Stat. Ann. §511, and may be admitted in evidence without regard to sec. 12368, O. S. 1931, 68 Okla. Stat. Ann. §516."

Section 12363, O. S. 1941 (Repealed S. L. 1939, page 404) while in effect, provided that:

"Any person owning any bond, note of any duration of over eight months or other choses in action evidenced by writing located in the State of Oklahoma, may take same to the office of the county treasurer of the county in which the owner of said bond, note of a duration exceeding eight months, or other choses in action, resides or he may send a description of the same to said county treasurer, and pay to the said county treasurer a tax of two per centum of the face amount thereof for five years, or, at the option of such person, for a greater or less number of years at the same rate . . . ."

Section 12368, O. S. 1931 (repealed S. L. 1939, page 404) provided that no bond, or note of over eight months duration or other choses in action, which has not been registered as provided by section 12363, supra, shall be admitted in evidence in any of the courts of the State of Oklahoma, provided that this act shall not apply to notes se-

cured by real estate mortgages which have been or hereafter may be registered under the provisions of chapter 246, S. L. 1913, as amended by chapter 105, S. L. 1915.

The difference between the effect of failure to list and pay the taxes under section 12363, O.S. 1931, supra, and failure to list for taxation and payment of taxes under the Intangible Tax Law, is that failure to list and pay under section 12363, supra, rendered the bond, note, or other chose in action inadmissible in evidence, while, under the Intangible Tax statute, if plaintiff fails to allege in his petition and prove at the trial that the note, bond, or other chose in action has been listed for taxation and the taxes thereon paid, no judgment may be rendered thereon and the action must be dismissed.

It is obvious that if a supersedeas bond was not subject to the chose in action tax provided for by section 12363, O.S. 1931, then such a bond cannot be subject to the intangible tax.

Rehearing denied.

ARNOLD, C.J., LUTTRELL, V.C.J., and GIBSON, DAVISON, HALLEY, and JOHNSON, JJ., concur. WELCH and CORN, JJ., dissent.

WELCH, J. (dissenting). Admitting that a purely contingent liability or a claim based on such a contingent liability is not subject to the Intangible Tax Law, it seems to me that rule is not controlling here.

It was plaintiff's theory that liability had become fixed and the claim established by judgment and the judgment final before she bought it in 1947, and that seems to be borne out by the original opinion. Plaintiff was not the original obligee in the redelivery bond.

If the judgment liability was final so that plaintiff could buy it in 1947, and thereafter bring her individual action on it in 1948, I think it was no longer a purely contingent right or claim, and that it was subject to in-

tangible tax under the board terms of our Intangible Tax Law, and that plaintiff should have listed it for taxation at the beginning of the year 1948.