MASSACHUSETTS BONDING AND IN-SURANCE COMPANY, a Corporation, Plaintiff in Error,

v.

Lula L. SPRINGSTON, Guardian for William B. Springston, Sr., an Incompetent, Defendant in Error.

No. 36589.

Supreme Court of Oklahoma.

May 10, 1955.

820

Ralph C. Thomas, Tulsa, for plaintiff in error.

Houston, Klein, Melone & Davidson, Tulsa, for defendant in error.

CORN, Justice.

On February 5, 1944, William B. Springston, Sr., purchased a policy of disability insurance from defendant. The policy provided for payment of monthly indemnity against loss of life, limb, sight or time from accidental means, and also covered the same losses resulting from disease, under the policy provisions hereafter quoted.

.  "Monthly Indemnity—Loss of Time From Sickness

"Sickness Provision

"A. If such disease shall wholly and continuously disable the insured and prevent him from performing any and every duty pertaining to his occupation and shall necessarily confine him within the house, the Company will pay the Sickness Monthly Indemnity for the period of such continuous disability and confinement, not exceeding Twelve consecutive months.

"B. Or, if such disease shall wholly and continuously disable the Insured and prevent him from performing any and every duty pertaining to his occupation but shall not necessarily confine him within the house the Company will pay the Sickness Monthly Indemnity for the period of such continuous disability, not exceeding Two consecutive months."

This action was filed (December 1, 1953) to recover upon such policy upon the ground defendant had failed and refused to discharge the obligation arising under the policy for total disability. The petition alleged plaintiff's appointment as guardian of the insured, an incompetent; issuance of the policy and effectiveness thereof in July, 1952 when insured suffered an attack of Parkinson's disease totally disabling him to perform any work connected with his occupation; steady worsening of such condition until insured was committed to an institution (May 22, 1953) as a mental health case; defendant's refusal to pay monthly benefits for total disability, amounting to $800 due under the policy; that between July 1952 and May 1953 the insured had been unable to perform any work connected with his occupation, although the prescribed treatment was for him to take automobile rides and short walks for exercise. Plaintiff asked judgment for $800, alleged to be due under the policy by reason of insured's total disability.

Defendant answered by general denial. Defendant also alleged that under the policy monthly sick indemnity was payable for continuous disability and confinement to insured's home for not to exceed a twelve months period; plaintiff was not disabled and confined for such continuous period and defendant was not obligated to pay indemnity under this policy provision. Further, the policy provided for monthly indemnity to insured if continuously disabled and prevented from performing any work

connected with occupation but not necessarily confined within his home for two consecutive months; although insured was wholly and continuously disabled, he was not confined to his home, and defendant already had discharged its obligation for two months indemnity by paying $160.

When the case was tried a jury was impaneled and opening statement was made for plaintiff. In the opening statement defendant's counsel read to the jury the above quoted policy provisions, and other provisions relating to sick indemnity. Counsel stated that insured's total disability was admitted, but not that insured had been confined to his home as required by the policy. Further, the policy provision requiring regular attendance of a physician had not been met. Counsel further stated that if the jury found insured had been confined to his home during the effective period of the policy the verdict should be for plaintiff, but otherwise the jury should find for defendant.

Plaintiff moved for judgment upon this opening statement, for the reason defendant had removed from consideration any question relative to insured's total and permanent disability. The trial court sustained the motion and directed the jury to return a verdict for $781.24, the amount stipulated to be due upon the policy. Judgment was rendered in plaintiff's favor upon such verdict.

The assignments of error relied upon for reversal of this judgment are presented under the single proposition that the trial court erred in directing a verdict upon defendant's opening statement without the introduction of any evidence. Defendant says that the only issue removed from consideration by the opening statement was that concerning insured's total disability. Thus it is argued that, no evidence having been introduced there was nothing to inform the trial court upon three fundamental issues presented, to wit:

1. Plaintiff's capacity to sue as guardian of the insured, an incompetent.

2. A finding regarding insured's confinement to the home, as required by the policy, which was necessary to establish plaintiff's case.

3. Whether insured, as required by the policy, was visited by a physician once each week during the period of disability.

It is argued under the first subdivision that there was neither evidence nor anything contained in defendant's answer or opening statement to advise the court as to plaintiff's capacity to bring this action, which was fundamental in that the trial court's jurisdiction rested thereon. The statute, 12 O.S.1951 § 286, provides, in part, that allegations of "any appointment of authority" shall be taken as true unless denial thereof is verified. Defendant's answer herein was not verified. This argument is without merit. See Kerr v. McKinney, 69 Okl. 88, 170 P. 685; Crutchfield v. Bogle, Okl., 270 P.2d 640.

The two remaining subdivisions of argument, based upon the policy provisions, provoke questions not directly considered by this court heretofore. Defendant's argument may be summarized as follows: Applicable statutes, 15 O.S.1951 §§ 154–157, require that interpretation of a contract be governed by its language, where clear and explicit and if it does not involve an absurdity; and, where practical, all of a contract must be considered together in order to give effect to the entire instrument.

These rules of construction of contracts, supported by citation of our prior decisions, are relied upon by defendant as demonstrating that the instant contract was clear and unambiguous and not subject to interpretation; and, even though considered harsh and oppressive, should be considered as explicitly defining the nature and extent of an agreement which insured knew and understood to be a harsh agreement when he signed same. Defendant then says the policy provisions, heretofore quoted, were so clearly antagonistic that it creates an absurdity to say the insured failed to recognize this when the policy was purchased. Upon this basis defendant concludes the only interpretation to be given these policy provisions is that given to them by the parties upon execution of the contract. Hence,

giving each part meaning, the first quoted clause is effective only if insured is confined to his home, while the second is effective only in the event insured was not so confined.

Recognizing that the questions have never been considered by this court, defendant points to the diverse holdings upon these questions by other appellate courts, although admitting such decisions reflect a monumental diversity of opinion in construing the same policy provisions as are considered here. The multitude of decided cases, the accompanying diversity of results, and the reasoning upon which the decisions are based, precludes extended citation and analysis of the reported cases. The varied holdings relative to the interpretations placed upon policy provisions requiring confinement to the home, and under regular care of a physician, may be observed in Couch On Insurance, Sections 1678–1679.

Defendant cites and relies upon Mutual Benefit Health and Accident Ass'n v. Cohen, 8 Cir., 194 F.2d 232, certiorari denied, 343 U.S. 965, 72 S.Ct. 1059, 96 L.Ed. 1362; Carabelli v. Mountain States Life Ins. Co., 8 Cal.App.2d 115, 46 P.2d 1004. The Cohen case, supra, presents the precise factual situation revealed in the present case. In each of the cases, supra, the courts applied a strict construction to the questioned provisions. And, it should be noted, in none of the cited cases was the fact of total permanent disability admitted. Review of many cases from other jurisdictions impels the conclusion that the construction contended for by defendant clearly represents the minority view upon these questions.

In 29 Am.Jur., Insurance, Sec. 1171, the following statement is made concerning a policy provision requiring the insured to be confined to the house.

"Confinement to House.—While some courts have given a literal construction to a requirement that the insured be confined to the house, most courts have adopted the view that the provisions of a health or accident policy requiring the insured to be confined to the house do not have to be literally complied with in order to entitle the insured to indemnity. According to these courts, a person may be totally incapacitated and confined to his house within the meaning of a policy although he takes some exercise outdoors or visits his physician, provided he is entirely incapacitated for work or business on account of his injury or illness. It is also generally held or recognized that confinement at a hospital or sanitarium is confinement within a house within the meaning of such a provision. It has accordingly been held that an insurance contract conditioning recovery for sickness upon the insured having been, by reason of his sickness, strictly and continuously confined within the house, when liberally construed, covers journeys made by him under the advice of a physician, and in quest of health, from his home to distant points where he was under treatment and substantially all of the time confined within hospitals."

A great number of cases are cited in support of the rule of liberal construction. A majority of the decisions holding that confinement to the house must be established, in order to provide for total disability, is evidentiary only and not prerequisite to recovery. Discussion of analogous situations seems unnecessary. It would seem that a reasonable construction of a policy provision requiring confinement to the house would be that the parties intended the insured's illness to be such as totally incapacitated him from carrying on routine affairs or engaging in business or other activities. It would be completely absurd to construe such a provision to mean that an insured could not leave the confines of his own roof to travel by ambulance to a nearby physician's office to secure such treatment as could only be afforded him there. See Lieberman v. Columbia Nat. Life Ins. Co., 47 Pa.Super. 276; Reeves v. Midland Casualty Co., 170 Wis. 370, 174 N.W. 475, 959, which cases apply such strict construction. And, it would seem only slightly less absurd to construe such language to mean that, although admittedly totally disabled by disease, the insured had breached the policy requirement by following the advice of the

physician and leaving his home for short periods of airing and exercise. We decline to declare a rule which binds an insured to the extent that recovery can be had for disability only upon establishment of the literal fact of having remained under his own roof under all circumstances.

The final contention involves the claim there was no evidence from which the court could find whether, in accordance with the condition in the policy, insured had been visited by a physician every seven days during the period of disability. Just as in construing the language relative to insured's confinement within the house, there are many adjudicated cases construing the requirement that the insured must be regularly attended by a physician. However, the cases dealing with the reasonable interpretation of the meaning of this requirement do not present such diversity of views.

 The majority rule is that, in instances where the insured's disability is established, such a policy provision is evidentiary only. The principle appears to be well settled that such a requirement has no application in cases of permanent disability. Two reasons are given in support of such holdings. *First*, it is said that the law does not require performance of futile acts and, although fulfillment of this requirement attests the serious nature of the illness, to give a literal meaning to such provision would be to exalt the letter of the law while submerging the spirit of the contract. *Second*, it is recognized that the primary purpose of such a provision is to establish the good faith of the insured's claim to guard against fraud. Thus, where it is manifest fraud could not exist, the purpose of the contract would be violated by giving such provision a literal and narrow construction. See Couch On Insurance, section 1679; and cases cited in footnotes; the cases collected in the annotation 115 A.L.R. 1062; Hunter v. Federal Casualty Co., 199 App.Div. 223, 191 N.Y.S. 474; Harasymczuk v. Massachusetts Accident Co., 127 Misc. 344, 216 N.Y.S. 97; Davidson v. First American Ins. Co., 129 Neb. 184, 261 N.W. 144. Each of the reasons advanced in support of the rule appear equally valid.

In this case the insured admittedly was totally and permanently disabled as the result of disease. His only activities were those mentioned. His condition of total disability could not have been improved by additional, regular treatment by his physician. Under these circumstances we hold that a reasonable construction of the insurance contract under consideration neither required his illness actually to confine him within the walls of his own home, or that he be attended by his physician at least once each 7 days although totally disabled.

 The trial court correctly sustained plaintiff's motion for judgment upon defendant's opening statement since, in view of the admission therein, no issue of fact remained for the jury to consider. McGuirt v. Sandridge, 204 Okl. 270, 229 P.2d 171.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.