VERNON D. BAKER, Administrator of the Estate of GER-
ALD W. MEYER, Deceased, Plaintiff and Respondent, v.
RENTAL SERVICE COMPANY, Inc., and DALE EU-
GENE SEVERSON, Defendants and Appellants.

No. 11198.
Submitted September 11, 1967. Decided October 13, 1967.
432 P.2d 624.

Leonard H. Langen (argued), Glasgow, for appellants.

Loren J. O'Toole, Plentywood, John M. Kline (argued), Glasgow, for respondent.

HONORABLE FRANK HASWELL, delivered the Opinion of the Court.

This is an appeal by defendants from a judgment for $36,000 rendered against them in a personal injury death action following a jury trial.

The suit involved is a tort action seeking damages for injuries and death of Gerald W. Meyer arising out of an accident that occurred on June 5, 1965, in a rest area located alongside U. S. Highway No. 2 approximately one and one-half miles west of the Montana-North Dakota state line in Roosevelt County, Montana, at which time and place a large, loaded grain trailer fell upon him. Plaintiff is the administrator of Meyer's estate and brought the action on the basis of the claim that Meyer would have had but for his death which survived to the administrator of his estate under the Montana survivorship statute, R.C.M.1947, § 93-2824. Defendants are three in number: Rental Service Company, Inc., a corporation engaged in

the business of moving oil rigs, heavy equipment, trucks, and trailers, who will hereafter be referred to as Rental Service; Dale Eugene Severson, a truck driver employee of Rental Service; and Gerald Patrick Sturgeon, a helper employee of Rental Service.

The defendants plead three defenses: (1) denial of negligence on their part; (2) contributory negligence of Meyer, the deceased; (3) assumption of risk on the part of Meyer, the deceased.

The general factual situation giving rise to this action is undisputed and can be summarized in this manner: Meyer had driven a tractor and trailer unit loaded with grain onto a soft, newly-surfaced rest area located alongside the highway. The trailer unit was so heavy that it sank into the surface and Meyer was unable to extricate it. He detached the tractor unit from the trailer, drove to Rental Service, and hired them to extricate the trailer. Severson and Sturgeon, both employees of Rental Service, drove a five-ton International truck equipped and designed to lift heavy equipment and belonging to Rental Service, to the rest area where Meyer's grain trailer was embedded.

The five-ton International truck owned by Rental Service was equipped with a power winch attached to the bed of the truck immediately behind the cab; around the spool of the winch was attached a braided wire cable which ran to a pulley attached to the bed of the truck near the rear end. After passing through this pulley, the wire cable ran upwards to a second pulley attached near the top of two gin poles which were attached at the bottom to the bed of the truck and ran generally upward and slightly rearward where they came together and where this second pulley was attached. After passing over this second pulley, the braided wire cable ran downward; at the end of the cable and attached to it was a tail chain with a hook attached to it.

Upon arriving at the rest area, Severson and Sturgeon ob-

served the loaded grain trailer, which was about 30 feet long and 8 feet wide, with its rear wheels embedded in the surface; the grain trailer had no front wheels but the right front end was blocked up and the left front end was raised to approximately the same height by a large jack resting on blocks. There were also two railroad ties under the trailer, one on top of the other, located between the dollies and the front end of the trailer. In order to lift the front end of the trailer, a log chain belonging to Rental Service was attached to the trailer by looping around the "fifth wheel pin" and the hook at the end of the winch line run through this loop and attached to the winch line. In this manner the trailer was to be raised.

During all this time and thereafter, Severson was in charge of the job and Sturgeon was assisting him. Meyer was standing around in the immediate area of the Rental Service Truck and the grain trailer. There is testimony that some kind of warning was twice given by Severson to Sturgeon and Meyer not to get under the grain trailer, but the exact words used and their audibility to Meyer are vague and conflicting to a degree.

The grain trailer was first raised four or five feet, one of the ties was placed under the dolly, and when the trailer was lowered the tie began to split. The trailer was then raised up four or five inches to permit substitution of the second tie for the one that was splitting. During this process a link in the log chain broke, the front end of the trailer suddenly fell, and Meyer was struck and pinned underneath the fallen trailer receiving injuries that resulted in his death shortly thereafter.

The case was tried to a jury. Plaintiff called four witnesses on the issue of liability during presentation of his case in chief: Montana Highway Patrolmen Baldry and Marshall as his own witnesses and two of the defendants, Severson and Sturgeon, as adverse witnesses for cross-examination under Rule 43(b), M.R.Civ.P. Counsel for defendants cross-examined

the two highway patrolmen and examined one of them, Marshall, out of turn as his own witness; Counsel for defendants did not examine either defendant Severson or defendant Sturgeon. At the conclusion of plaintiff's case in chief plaintiff's counsel moved for a directed verdict on the issue of liability as follows:

"MR. KLINE: At this time, comes the Plaintiff and moves the Court for a Directed Verdict in the course of the Plaintiff's Case, and I would like to state at this time, that the only witnesses to this injury and the death of this Mr. Meyer, was the Defendant Dale Eugene Severson and he has already testified on that situation, wherein he stated that he made a dive, and that Meyer made a dive from where he was standing approximately near the middle of the tires, and that the length would be almost nine feet that he had leaped and that this is either an attempt at suicide or an attempt to jump away from an emergency. That the Defendant is bound by the testimony of the Defendant on the witness stand, and the Plaintiff states now that the rule of res ipsa loquitur applies to this case with the chain breaking and that the Defendants must come forth with an explanation, and that the only explanation possible is the explanation of the Defendant Severson and Severson explained it and this explanation would not allow it to be anything but an emergency situation or suicide. That even contributory negligence would not be a defense to this action because of the fact that Severson himself has testified in that he was underneath—that he was not underneath and that he dove underneath and under no circumstances could contributory negligence be a defense, and therefore, the Plaintiff moves and believes he is entitled to a Directed Verdict."

It is to be noted that in their briefs and oral argument both counsel agreed that this motion was made at the conclusion of plaintiff's case in chief and it will be so treated by us.

Defendants' counsel resisted this motion and made an offer of proof in the following words:

"MR. LANGEN: Your Honor, we resist this motion for a directed verdict. Obviously, Plaintiff contends that a directed verdict should be made by reason of certain facts that was testified to and that he is relying apparently on the terminology used by the Defendant, Severson, on cross-examination, the word 'dive' saying that he 'dived underneath' and that it was either suicide or an emergency and the defense of contributory negligence or assumption of risk does not apply. Now the defendants will prove through the use of these witnesses the following: When they arrived at the scene of this accident, the trailer was blocked and that a chain was hooked to this trailer and was used in order to lift the trailer the first time and that the chain did not break, and that the chain is no stronger than the weakest link of that chain, and there is no person in the world that could say that a chain will not break, and during this first lifting the deceased was warned and told to stay away from underneath or next to this trailer by Severson, and this creates an issue of fact. The trailer was lifted up in the air and then lowered again on the tie and dollies and this tie began to crumble and break and for that reason, a second lift was performed and again the deceased was warned not to get underneath and to stay clear of this trailer and then the trailer was lifted the second time and after it was lifted, then Severson, or rather the deceased, Meyer, placed his body underneath the trailer and after his body was under the trailer, the trailer then came down. Now it may be that during portions of the testimony the word 'dived' was used but the word 'dived' could mean many things to me and depends on the person who used the word 'dived'. I feel that this is a case where contributory negligence and where assumption of risk is clear and I feel that these defenses would be proper for the jury to consider and should be."

The trial judge at this time made the following ruling:

"THE COURT: I am going to direct a verdict, as I think

that this is a res ipsa case and that the defenses of contributory negligence and the assumption of risk are not good."

So far as the issue with which we are concerned the trial proceeded on the sole issue of damages, defendants' objections to the directed verdict on the issue of liability were preserved upon the settlement of jury instructions, and the jury returned a verdict against Rental Service and Severson for $36,000. Motion for new trial was duly made, not granted, and this appeal followed from the judgment and denial of new trial.

Defendants Rental Service and Severson assign as error the following: (1) The action of the trial court in removing the issues of negligence, contributory negligence and assumption of risk from consideration by the jury; and (2) The denial of their motion for new trial.

The issue determinative of this appeal can be briefly stated in the following manner: Was the trial court correct in granting a directed verdict for plaintiff on the issue of defendants' liability at the conclusion of plaintiff's case in chief? We must answer in the negative. Our basic reason for this holding is that the motion for directed verdict and the court's ruling therein at the conclusion of plaintiff's case in chief were premature in that they denied the defendants an opportunity to present their evidence on the defenses of no negligence, contributory negligence and assumption of risk.

Motions for directed verdicts in civil cases are governed by Rule 50, M.R.Civ.P., which is identical with the Federal rule (except for the addition of a sentence to sub-division (b) thereof not relevant to the instant case). Decisions of the federal courts construing subsection (a) of Federal rule 50 indicate that the motion for directed verdict can properly be made: (1) After the opening statement of adverse counsel, if by such statement it is clearly shown no cause of action exists or that the cause of action is undeniable; (2) at the close of the evidence offered by an opponent; or (3) at the close of all the evidence (Moore's Federal Practice, Vol. 5, Sec. 50.04, p. 2338

and cases annotated thereunder). The courts of other states have held that a motion for directed verdict may not be made until the party against whom it is directed has been allowed to present all of his evidence. (Records v. Eaves, 62 Colo. 324, 160 P. 1126; Henderson v. Baldwin, 98 Okl. 19, 223 P. 848; Hatch v. Strebeck, 58 N.Mex. 824, 277 P.2d 317). In Hatch v. Strebeck, supra, plaintiff moved for a directed verdict in the midst of examining defendant during plaintiff's case in chief; the motion was denied and this was assigned as error upon appeal. The New Mexico Supreme Court had this to say:

"The first motion [for a directed verdict] was properly denied by the trial court because the time of the motion was not appropriate. Such a motion ordinarily cannot be made until movant's adversary has presented his case or rested. From the point of view of the orderly administration of justice and by the wording of Rule 50(a) of the Rules of Civil Procedure, we believe this to be the rule applicable to the first motion in the instant case."

Reason also militates against the granting of a motion for directed verdict before the party against whom it is made has had an opportunity to present evidence in support of his claim or defense which, if proven, would entitle him to judgment. To grant a directed verdict against such party before he has had an opportunity to offer such material evidence as he has to prove a legally sufficient claim or defense is, in effect, to deny such party his day in court.

As applied to the instant case, one illustration will suffice. Plaintiff's proof of negligence on the part of defendants in the instant case is dependant upon application of the doctrine of res ipsa loquitor. Assuming without deciding that res ipsa loquitur is applicable here, an inference or rebuttable presumption of negligence on the part of defendants arises. (Hardesty v. Largey Lumber Co., 34 Mont. 151, 86 P.29; Maki v. Murray Hospital, 91 Mont. 251, 7 P.2d 228; Harding v. H. F. Johnson, Inc., 126 Mont. 70, 244 P.2d 111; Whitney v. North-

174

west Greyhound Lines, Inc., 125 Mont. 528, 242 P.2d 257; Jackson v. William Dingwall Company, 145 Mont. 127, 399 P.2d 236; Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979). Defendants then have the burden of rebutting the inference or presumption of negligence by showing that they did, in fact, exercise ordinary care or that the chain broke without being proximately caused by any negligent act or omission on their part. (Harding v. H. F. Johnson, Inc., supra; Hardesty v. Largey Lumber Co., supra.) Here defendants were denied the opportunity of introducing evidence in their case in chief rebutting this inference or presumption by the premature grant of a directed verdict for plaintiff on the issue of liability at the conclusion of plaintiff's case in chief. The vice of the situation in the instant case lies in the fact that defendants were precluded from offering any explanation of the accident consistent with absence of negligence on their part.

Several case were cited in briefs and oral argument by plaintiff's counsel in support of the proposition that the trial court can grant a directed verdict for plaintiff at the conclusion of the plaintiff's case in chief. All are distinguishable on the facts and do not support plaintiff's position under the circumstances of this case: Richardson v. Crone, 127 Mont. 200, 258 P.2d 970 (No objection by defendant to plaintiff's motion for directed verdict and no indication that defendant had any evidence to offer; no offer of proof by defendant; no objection by defendant to court's instruction to jury to bring in directed verdict); McGuirt v. Sandridge, 204 Okl. 270, 229 P.2d 171; Smith v. Groesbeck, 54 S.D. 350, 223 N.W. 308; Massachusetts Hospital Life Ins. Co. v. Nesson, 286 Mass. 216, 190 N.E. 31. (All these cases involve situations where the evidence sought to be offered by defendants was immaterial and plaintiff was entitled to verdict notwithstanding this evidence.)

Plaintiff also argues that a directed verdict was justified because the only two witnesses alive who saw the

accident had already testified as adverse witnesses for plaintiff together with the two investigating highway patrolmen; that no one else knew anything about the accident; that therefore all the evidence that could be produced was already before the court and defendant could add nothing even if given the opportunity to present evidence in his case in chief. Is this correct? We think not. The fact that these four witnesses were examined by the plaintiff, two under cross-examination and the other two were cross-examined by defendants, in no way indicates that all their testimony was produced.

To say that all the evidence that can be produced is before the court under these circumstances is to close one's eyes to the realities of trial practice under an adversary system. Plaintiff's counsel usually does not question witnesses he calls in his case in chief on matters touching defenses pleaded by the defendants.

We hold, therefore, that under the circumstances disclosed in this case, the motion by the plaintiff for a directed verdict on the issue of liability at the conclusion of his case in chief was premature, untimely and ought not to have been granted. We deem it unnecessary to discuss the other issues and arguments raised by counsel in their briefs and oral argument as our decision rests on the foregoing grounds.

This opinion is in no sense to be construed as determining whether the doctrine of res ipsa loquitur is applicable or inapplicable to this case, or whether the defenses of contributory negligence or assumption of risk are issues. The determination of these matters must abide retrial as we have no way of determining in advance how the evidence will develop at that time.

Accordingly, the judgment of the district court is reversed and the cause is remanded for a new trial.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, ADAIR and JOHN CONWAY HARRISON concur.