**Janice L. PRICE, Appellee,**

v.

**The STATE of Oklahoma, ex rel., STATE EMPLOYEES GROUP HEALTH, DENTAL AND LIFE INSURANCE BOARD, Appellant.**

No. 64838.

Supreme Court of Oklahoma.

July 5, 1988.

Jim Harkins, Holcomb & Harkins, Buffalo, for appellee.

Michael C. Turpen, Atty. Gen., Susan Brimer Loving (formerly Agosta), Asst. Atty. Gen., Oklahoma City, for appellant.

ALMA WILSON, Justice:

The sole issue before this Court is whether appellee, who voluntarily terminated her employment with the State, is entitled to health insurance benefits under the extended benefits provision of the State Employees Group Insurance. We answer in the affirmative.

The facts are not in dispute. On May 17, 1982, appellee and her minor son [hereinafter Son] were insured with the State Employees Group Insurance when Son was hospitalized for accidental injuries to his pelvis and legs. As a result of the injuries, Son sustained major medical problems requiring extensive surgeries. His pelvis was fractured in five places and his bladder was torn loose from the ureter. On June 9,

1982, Son was released from the hospital but was required to wear a catheter for eight months pending reconstructive surgeries. During the eight month period Son was continually monitored by two physicians. In July 1982, appellee terminated her employment with the State of Oklahoma to care for her son who remained in bed during the summer months. In the fall, Son attended school with a tube inserted into his bladder and draining into a bag that he wore on his leg. During the school term Son prudently limited his activities and was absent 42 days. On February 7, 1983, Son was again hospitalized and the first of the series of reconstructive surgeries was performed. The State Employees Insurance paid the initial hospitalization but refused to pay the expenses incurred subsequent to appellee's termination of employment.

Appellee filed a claim of unpaid medical bills totalling $9,234.99 and asked for an administrative hearing. Upon hearing the evidence and arguments of counsel, the hearing examiner recommended payment of insurance benefits. In a four to two decision, the appellant herein, Oklahoma State Employees Group Insurance Board, overruled the hearing examiner and denied the claim concluding that appellee was not entitled to extended benefits for medical expenses after termination of employment because Son was not totally and continuously disabled within the meaning of the State Board's Rules, Regulations and Modes of Procedures[1] [hereinafter Rules and Regulations]. Appellee appealed to the district court which vacated and reversed the order of the State Board concluding that appellee's son was totally disabled within the meaning of the rules and law. The State Board appealed wherein the Court of Appeals reversed the order of the trial court and affirmed the State Board's order concluding that the trial court substituted its judgment for that of the State Board in contravention of 75 O.S. 1981 § 322(1)(e) of the Oklahoma Administrative Procedures Act. We granted appellee's Petition for Certiorari.

Rule 313 of the State Board's Rules and Regulations promulgates the circumstances under which insurance coverage may continue after an insured's termination of employment with the State. The Rule provides:

If the Major Medical Expense Benefit terminates as to the employee or covered dependent for any reason, benefits are payable for covered Major Medical Expenses incurred within twelve consecutive months after such termination date with respect to:

(1) accidental bodily injury or sickness causing *total disability* at termination date and on account of which the employee or covered dependent are [sic] so disabled to and including the date such Major Medical Expenses are incurred;

provided, however, that benefits are not payable under any other group insurance policy or group plan.

The Board shall have the right to require proof of such total disability to qualify for the above described extended benefits. It shall be either a Social Security Disability Award Letter signed by the commissioner at Baltimore, Maryland, or a letter from the attending physician identifying the cause of total disability, date of onset and anticipated date of recovery, or approval by the governmental board authorized to approve total disability.

The State Board's Rules and Regulations do not define total disability. The record neither contains nor do the briefs of counsel mention an insurance policy that would assist in defining total disability. The State Board relies on the term "disabled" defined by Rule 316.14 of the Rules and Regulations to mean "that the employee or dependent while under the care of a doctor, is confined by a physician either in the hospital or at home and certified by the physician as unable to be physically at

---

1. 74 O.S. § 1304 of the State Employees Group Insurance Act created the State Employees Group Insurance Board. Pursuant to § 1306(2) of the Act, the State Board is empowered to adopt rules and regulations consistent with the provisions of the Act.

work and perform the normal duties of his occupation." Thus, the point of contention. The State Board contends that Rule 316.14 applies and home confinement is a prerequisite to claiming the extended benefits. In other words, the State Board argues that Appellee is not entitled to the extended benefits pursuant to Rule 313 because Son's accidental bodily injuries did not cause total disability because he attended school and was not confined to his home. The State Board concedes that appellee would be entitled to benefits if Son had confined himself to the home.

We find the State Board's position untenable for the following reasons. First, the burden of proving total disability is set forth in Rule 313. The appellee introduced into evidence four letters from two physicians which amply explained the extent and gravity of Son's disabilities resulting from the accidental injuries. The appellee met her burden of proof and the facts are uncontraverted. Secondly, we take judicial notice of the handbook publication, *Oklahoma Group Insurance Program,* issued by the State Board. The handbook summarizes State Employees Group Insurance and defines total disability as follows:

Total disability: For purposes of the health plan only, this means the employee is unable to be physically at work and perform the normal duties of his occupation and the employee is prevented continuously from engaging in any employment. *A person whose eligibility is not based on active employment will be considered totally disabled while, as a result of bodily injury or sickness, he is unable to engage in his regular and customary activities and is not engaged*

*in any occupation for wages or profit.* [Emphasis added.]

We take note that the State Board's publication defining and interpreting total disability no where mentions home confinement. Applying said definition, it is uncontraverted that Son was unable to engage in his regular and customary activities and was not engaged in any occupation for wages or profit.

■ Lastly, this Court has construed the term total disability within the context of various insurance contract provisions as it applies to a working adult.[2] At an early date this Court adopted[3] and has consistently followed[4] the prevailing practical and liberal view of total disability. The term does not mean absolute physical disability on the part of the insured. *Continental Casualty Co. v. York,* 402 P.2d 878 (Okla. 1965). Total disability does not mean, as its literal construction would require, a state of absolute helplessness. Instead, total disability means inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner. *Continental* at 881.

■ This Court has also contrued home confinement provisions contained in accident and disability policies. *Continental Casualty Co. v. York,* 402 P.2d 878 (Okla. 1965); *Automobile Owners Safety Ins. Co. v. Baker,* 324 P.2d 867 (Okla.1958); *Massachusetts Bonding & Ins. Co. v. Springston,* 283 P.2d 819 (Okla.1955). *Continental* and *Baker* followed the rule adopted in *Springston* that where the insured's disability is established home confinement is evidentiary only and not a prerequisite to

2. *See Continental Casualty Co. v. York,* 402 P.2d 878 (Okla.1965) (construing the definition of total disability of an accident insurance policy); *Metropolitan Life Ins. Co. v. Fisher,* 382 P.2d 434 (Okla.1962) (construing a non-occupational total and permanent disability provision in a life insurance contract); *Equitable Life Assur. Soc. of U.S. v. Davis,* 192 Okl. 429, 137 P.2d 548 (1943) (construing total disability provisions of a group life policy); *Travelors Ins. Co. v. Blake,* 176 Okl. 364, 55 P.2d 975 (1936) (construing total disability in an accident insurance policy); *New York Life Ins. Co. v. Razzook,* 178 Okl. 57, 61 P.2d 686 (1936) (construing a non-occupational total dis-

ability provision of a life insurance policy); *Metropolitan Life Ins. Co. v. Richter,* 173 Okl. 489, 49 P.2d 94 (1935) (construing an occupational total disability provision of an accident insurance policy); *Ozark Mut. Life Ass'n of Mena, Ark. v. Winchester,* 116 Okl. 116, 243 P. 735 (1926) (construing total disability under provisions of an accident insurance policy).

3. *Continental Casualty Co. v. Wynne,* 36 Okl. 325, 129 P. 16 (1912).

4. See footnote 2.

recovery. Oklahoma follows the majority view that gives a reasonable and liberal construction, rather than a literal construction, to the requirement of home confinement. In adopting the rule we emphatically stated "[w]e decline to declare a rule which binds an insured to the extent that recovery can be had for disability only upon establishment of the literal fact of having remained under his own roof under all circumstances." *Springston,* 283 P.2d at 823. The reasons for the rule were aptly stated in *Springston* as follows:

*First,* it is said that the law does not require performance of futile acts and, although fulfillment of this requirement attests the serious nature of the illness, to give a literal meaning to such provision would be to exalt the letter of the law while submerging the spirit of the contract. *Second,* it is recognized that the primary purpose of such a provision is to establish the good faith of the insured's claim to guard against fraud. Thus, where it is manifest fraud could not exist, the purpose of the contract would be violated by giving such provision a literal and narrow construction.

*Springston,* 283 P.2d at 823.

■ The rules of law espoused above and fastly adhered to by this Court over the test of time evolved as a result of interpreting the terms total disability and home confinement within various provisions of insurance contracts as they apply to disabled working adults. This Court has not heretofore applied the rules of law within the context of construing the same terms as used by an administrative agency s regulations which by operation of law become a part of the insurance contract. We now do. Nor has this Court heretofore been presented with a factual situation involving a disabled boy who attends school. Given the medical facts, does the Son's conduct of attending school make his actual disability any less than total? We think not. How are we to apply the rules of law to a disabled boy who chose to attend school? As did the trial court, we adhere to the practical approach [5] and hold that Son was totally disabled within the meaning of the rules and law. As the trial court astutely stated:

[T]he objective signs clearly reflected total disability for a sixteen year old boy. He was sentenced to wear a chatheter [sic] as a temporary device, he could not go swimming, he was not able to play basketball, 'he really could not do anything', he weighed 95 pounds at 6 feet in height. He could not run, he could not play. Nevertheless the child did go to school, ... and he was not confined at home nor in a hospital. This boy was, during the whole period required to see Dr. Newman for care of the catheter.

It cannot be held as a matter of law that Son was not totally disabled because during a portion of the eight month period he made a good faith effort to attend school. The facts clearly show that Son put forth considerable effort to attend school while still incapacitated by his injuries. Appellee would clearly be entitled to receive benefits

**5.** The following authority illustrates the practical application of various factual situations to the practical construction rules of law espoused in the body of this opinion. In *Continental Casualty Co. v. York,* 402 P.2d 878 (Okla.1965), we allowed benefits to a physician who suffered a stroke yet remained ambulatory and did not confine his restricted activities to his home. In *Massachusetts Bonding & Ins. Co. v. Springston,* 283 P.2d 819 (Okla.1955), we allowed benefits to insured who suffered Parkinson's disease wherein we held a reasonable construction of the contract terms did not require his illness to actually confine him within the walls of his home. Applying a practical construction in *Automobile Owners Safety Ins. Co. v. Baker,* 324 P.2d 867 (Okla.1958), we held that the insured who did not confine his activities to his home and assisted with the family business was entitled to benefits. In *Metropolitan Life Ins. Co. v. Fisher,* 382 P.2d 434 (Okla.1962), we allowed benefits to an insured who entered a second career after his disability precluded manual labor. In *Equitable Life Assur. Soc. of U.S. v. Davis,* 192 Okl. 429, 137 P.2d 548 (1943), we allowed benefits to the insured who suffered from a chronic heart ailment yet did not desist from work. In *Travelors Ins. Co. v. Blake,* 176 Okl. 364, 55 P.2d 975 (1936), we allowed benefits to the insured who suffered a foot injury yet did not disist from work. In *Ozark Mut. Life Ass'n of Mena, Ark. v. Winchester,* 116 Okl. 116, 243 P. 735 (1926), we allowed benefits to a housewife who suffered an injury to her foot and did not desist from all of her housework duties.

if she had elected to keep her son home from school. The State Board's Order was clearly erroneous and in error of law. *See* 75 O.S.1981, § 322(1)(d) & (e). We therefore VACATE and withdraw the opinion of the Court of Appeals and AFFIRM the trial court.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, OPALA and SUMMERS, JJ., concur.

LAVENDER and SIMMS, JJ., dissent.

KAUGER, J., recused.